BJS NO. 2, INC., Plaintiff,

v.

The CITY OF TROY, OHIO, et al., Defendants.

No. C–3–98–50.

United States District Court, S.D. Ohio, Western Division.

July 29, 1999.

Henry Louis Sirkin, Laura A Abrams,
Sirkin, Pinales, Mezibov & Schwartz—1,

Cincinnati, OH, for BJS No.2, Inc., an Ohio Corporation dba Total Xposure, plaintiffs.

William McGregor Dixon, Jr., Shipman, Dixon & Livingston Co., L.P.A., Troy, for Troy, City of Ohio, City Council of Troy, Ohio, Frank B Davis, In his official capacity as zoning administrator, City of Troy, W McGregor Dixon, Jr, In his official capacity as Law Director for the City of Troy, defendants.

George Demetrios Jonson, Montgomery, Rennie & Johnson—1, Elizabeth Ann McCord, Cincinnati, OH, for Robert J Lindeman, In his official capacity as Judge, Court of Common Pleas, Miami County, OH, Montgomery Rennie & Jonson.

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION (DOC. # 17); DEFENDANTS TO BE PRELIMINARILY ENJOINED FROM ENFORCING ORDINANCE PROVISIONS; BOND SET; TEMPORARY RESTRAINING ORDER SET ASIDE; CONFERENCE CALL SET TO DETERMINE FURTHER PROCEDURES

RICE, Chief Judge.

This matter comes before the Court upon the Plaintiff's Motion for a Preliminary Injunction (Doc. # 17). The Plaintiff seeks to enjoin the enforcement of (1) a municipal adult-entertainment Ordinance [1]; and (2) a state court preliminary injunction that prohibits the Plaintiff from operating its "Total Xposure" nightclub. In support of its motion, the Plaintiff contends that

the Ordinance and the state-court judgment constitute unconstitutional prior restraints on nude and semi-nude dancing at its nightclub.

I. *Factual Background and Procedural History*

BJS No. 2, Inc. ("BJS"), owns and operates Total Xposure, a "cabaret-style" nightclub in Troy, Ohio. Total Xposure is located at 1615 Haworth Court, an area zoned "M–2 Heavy Industrial," within 1,000 feet of a residential area. (Doc. # 11, Stipulation of Facts, at ¶ 2, 3). BJS opened the nightclub on March 16, 1997, and featured nude and semi-nude performances. (*Id.* at ¶ 4). The following day, the Troy City Council enacted Ordinance No. 0–8–97, which amended portions of Title Five of the Codified Ordinances of Troy ("Title Five"). (*Id.* at ¶ 5).

Among other things, the amendments pertain to zoning for adult-entertainment facilities and applications for conditional uses. (*Id.*). They allow adult-entertainment facilities in M–2 Heavy Industrial Districts only as "conditional uses." (*Id.* at ¶ 6). Furthermore, pursuant to Section 1135.03(c) of amended Title Five, any person desiring to open a business listed as a "conditional use" must first apply for a conditional use permit from a City Administrative Board.[2] (*Id.*).

The Administrative Board may issue the permit if the City's Ordinances identify the proposed use as a conditional use and if the Board determines: (a) that the use will comply with all applicable zoning regulations; (b) that the applicant has obtained all necessary permits; (c) that the location

---

1. The Ordinance at issue, Ordinance No. 0–8–97, does more than regulate adult-entertainment in the City of Troy. In the present case, however, the Plaintiff challenges the Ordinance's constitutionality, only insofar as it seeks to regulate adult-entertainment establishments. Consequently, for present purposes, the Court will refer to Ordinance No. 0–8–97 as an "adult-entertainment" ordinance.

2. Section I of Ordinance No. 0–8–97 defines "conditional use" as follows: "Conditional use is a use which may be permitted by the Administrative Board to allow certain specific developments or uses that would not otherwise be permitted in that particular zoning district where the land is located. These uses are permitted only after the applicant has followed the procedures of Section 1135.03(c)." As set forth herein, § 1135.03(c) governs applications for a conditional use permit.

and size of the conditional use, the nature and intensity of the operation involved, the size of the site in relation to the conditional use, and the location of the site with respect to streets giving access to the use, are such that the conditional use will be in harmony with the appropriate and orderly development of the district in which the conditional use is located; and (d) that the proposed conditional use will not cause substantial injury to the value of other property in the area and will contribute to, and promote, the convenience and welfare of the public. (*Id.* at ¶ 7).

Furthermore, when granting a conditional use permit, the Administrative Board may impose any conditions, safeguards, and restrictions upon the premises benefitted by the conditional use that may be necessary to ensure compliance with the City of Troy's codified Ordinances, to reduce or minimize any potentially injurious effect of the conditional use on other property, and to carry out the general purpose and intent of the City's Ordinances. (*Id.* at ¶ 8). Finally, an applicant challenging the Administrative Board's denial of a conditional use permit must appeal to the state common pleas court, pursuant to Ohio Rev.Code Chapter 2506. (*Id.* at ¶ 9).

Following the amendment of Title Five, via Ordinance No. 0–8–97, the City's Zoning Administrator revoked BJS's permit to operate Total Xposure on March 27, 1997. (Judgment Entry, *Cook v. City of Troy Administrative Board of Appeals,* Miami Cty. C.P. No. 97–312 (Dec. 1, 1997)), attached to Doc. # 18, Defendant's Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction, at Exh. A. The City's Administrative Board of Appeals subsequently upheld the revocation. (*Id.*). Upon review, the Miami County Common Pleas Court affirmed the Board's ruling. (*Id.*). In so doing, the court found that BJS had misrepresented, at the time of its permit application, that it planned to operate a teen recreation center with tanning booths, billiards, a dance hall, and refreshments. (*Id.*). The court noted, however, that BJS instead had operated an "adult performance dance hall" with a separate billiards business. (*Id.*). Consequently, the court found that the premises' proposed use "changed without approval by the Zoning Administrator between the date of the issuance of the permit and the opening of the business." (*Id.*). The court also noted that the changed use resulted in increased parking demand, an issue BJS had failed to address before opening Total Xposure. (*Id.*). As a result, the court found the City's revocation of BJS's zoning permit appropriate. (*Id.*).

Thereafter, on February 10, 1998, BJS filed a Complaint for declaratory and injunctive relief in this Court, alleging that Ordinance No. 0–8–97, is unconstitutional on its face. (Doc. # 1). The City of Troy subsequently filed a complaint for injunctive relief in the Miami County Municipal Court on April 6, 1998, seeking to enforce the state court's revocation of BJS's zoning permit. The City later transferred the complaint to the Miami County Common Pleas Court, which granted its request for a preliminary injunction on September 4, 1998. *City of Troy v. BJS No. 2, Inc., dba Total Xposure,* Miami Cty. C.P. No. 98–279 (Sept. 4, 1998). In its ruling, the court noted that BJS was operating Total Xposure without a valid zoning permit. (*Id.*). The court also refused to consider BJS's arguments concerning the constitutionality of Ordinance No. 0–8–97, finding that issue "not currently before the Court." (*Id.*).

Following the Miami County Common Pleas Court's order granting a preliminary injunction and enjoining BJS from continuing to operate Total Xposure without a zoning permit, BJS filed an amended Complaint in this Court, seeking declaratory and injunctive relief. (Doc. # 14). The amended Complaint repeats BJS's earlier facial challenge to the constitutionality of Ordinance No. 0–8–97. It adds a claim against the City law director and the Miami County Common Pleas Court judge who granted the City a preliminary injunction on September 4, 1998. (*Id.*). In addition to challenging the facial validity of

Title Five, the amended Complaint also alleges that the legislation is unconstitutional "as applied." (*Id.*). Consequently, BJS seeks to enjoin the Defendants from enforcing the Miami County Common Pleas Court's preliminary injunction. (*Id.*).

On September 8, 1998, BJS filed a Motion for a Temporary Restraining Order ("TRO"), in this litigation, seeking to prevent the Defendants from enforcing the September 4, 1998, state court preliminary injunction, which prohibited BJS from "operating or doing any business at 1615 Haworth Court, Troy, Ohio, or from using the building for any purpose until further order of the Court or compliance with the applicable Troy ordinance." (Doc. # 15). After due consideration, this Court sustained BJS's request for a TRO. (Doc. # 16).

BJS then filed its present Motion for a Preliminary Injunction. (Doc. # 17). In its Motion, BJS seeks preliminary injunctive relief preventing (1) enforcement of Title Five, as amended by Ordinance No. 0–8–97, and (2) enforcement of the Miami County Common Pleas Court's September 4, 1998, preliminary injunction. (*Id.* at 1, 2). Also before the Court are the Defendants' Memorandum in Opposition to Plaintiff's Motion for a Preliminary Injunction (Doc. # 18), and BJS's Response to the Defendants' Memorandum in Opposition. (Doc. # 21).

## II. *Standard for Issuance of a Preliminary Injunction*

 A District Court considers four factors when deciding whether to grant a preliminary injunction. Those factors are: "(1) the likelihood that the party seeking the preliminary injunction will succeed on the merits of the claim; (2) whether the party seeking the injunction will suffer irreparable harm without the grant of the extraordinary relief; (3) the probability that granting the injunction will cause substantial harm to others[3]; and (4) whether the public interest is advanced by the issuance of the injunction." *Washington v. Reno,* 35 F.3d 1093, 1099 (6th Cir.1994). These four considerations are factors to be balanced, rather than prerequisites that must be met. *Id.* With these standards in mind, the Court turns now to its analysis of the Plaintiff's Motion.

At the outset, the Court notes that BJS's Motion presents two issues. *First,* BJS seeks to enjoin the City and its agents from enforcing the allegedly unconstitutional Ordinance No. 0–8–97. *Second,* it seeks to enjoin the Defendants from enforcing the state court preliminary injunction that prohibits BJS from using its building for any purpose. The Court will address these arguments in turn.

## III. *Enjoining Enforcement of the City's Ordinance* [4]

BJS contends Title Five, as amended by Ordinance No. 0–8–97, is unconstitutional on its face because it imposes a prior restraint on constitutionally protected expression without including two required "safeguards." (Plaintiff's Memorandum in Support of Motion for Preliminary Injunction, attached to Doc. # 17, at 4–10). Specifically, BJS argues that the City's legisla-

---

**3.** Although the Sixth Circuit defines this branch of the four-part test in terms of harm to others, the focus is on the harm that a defendant will suffer if the requested injunctive relief is granted. It is with this factor that courts have traditionally balanced the equities (i.e., the harm that the plaintiff will suffer in the absence of an injunction is balanced against that which will befall the defendant if same is granted). *See Southern Ohio Coal Co. v. United Mine Workers of America,* 551 F.2d 695 (6th Cir.1977).

**4.** For reasons to be set forth, *infra,* the Court concludes that the Plaintiff may properly challenge the constitutionality of Ordinance No. 0–8–97 "on its face." The Court pauses here, however, to note that its analysis herein does not assess the constitutionality of the City's Ordinance "as applied" to the Plaintiff. As the Court will explain in its analysis, *infra,* no "as applied" review is possible, because Ordinance No. 0–8–97 has not yet been "applied" to the Plaintiff (i.e., Total Xposure has not yet sought, and been denied, a permit under the new Ordinance).

tion fails to provide for a prompt decision on an applicant's conditional use request, and that it also fails to provide for speedy judicial review after the City denies a conditional use application. In a second argument, BJS claims the City's legislation is unconstitutional on its face, because it only allows adult-entertainment establishments to operate as "conditional uses" and gives City officials unbridled discretion to grant or deny conditional use permits. (*Id.* at 10–14). Given these perceived infirmities, BJS argues that the likelihood of success on the merits of its claim is substantial.

In response, the Defendants advance several arguments. *First,* they contend the Plaintiff lacks standing to challenge the constitutionality of the City's legislation. (Defendants' Memorandum in Opposition to the Plaintiff's Motion for Preliminary Injunction, Doc. # 18, incorporating by reference Defendants' Memorandum in Opposition to the Plaintiff's Motion for Temporary Restraining Order, Doc. # 19 at 2–5 [5]). *Second,* the Defendants urge the Court to abstain from "enjoining the state court's ability to enforce its judgment on a different matter." (*Id.* at 7). *Third,* they allege that the Court lacks jurisdiction to consider BJS's arguments. (*Id.* at 10–12). *Fourth,* they contend that the Court should sever any unconstitutional "licensing" portions of Ordinance No. 0–8–97 from other legitimate "location" and "zoning" provisions. (*Id.* at 12–13). *Fifth,* the

Defendants argue that *res judicata* applies to portions of BJS's claims. (*Id.* at 13–14). Before turning to the merits of BJS's various arguments, the Court, as a threshold matter, will address the foregoing procedural and jurisdictional defenses, as they apply to the Plaintiff's facial attack on Ordinance No. 0–8–97.[6]

## A. *Defendants' Procedural and Jurisdictional Defenses*

The Defendants first contend that BJS lacks standing to challenge the constitutionality of the City's Ordinance. Specifically, they raise a "redressability" argument. The Defendants first dispute BJS's standing to challenge the constitutionality of Ordinance No. 0–8–97, "as applied" by the Miami County Common Pleas Court. In particular, the Defendants contend that the state common pleas court affirmed the City's revocation of BJS's zoning permit because BJS changed the use of its property without prior approval, and not for reasons related to the adult-entertainment Ordinance. Consequently, the Defendants reason that declaring the City's adult-entertainment Ordinance unconstitutional would not redress BJS's injury (i.e., the revocation of its zoning permit). The Court will address this argument, however, in its later analysis of the City's Ordinance "as applied."[7]

In the present case, BJS alleges that Title Five, as amended by Ordinance

5. The Defendants filed both Motions on September 11, 1998, and incorporated their arguments against a temporary restraining order into their present Memorandum opposing BJS's request for injunctive relief.

6. The Defendants also assert these defenses in response to BJS's "as applied" constitutional challenge to the legislation's validity. BJS's "as applied" arguments will be addressed, *infra.*

7. As set forth more fully, *infra,* the state common pleas court approved the revocation of BJS's zoning permit for reasons unrelated to the City's new adult-entertainment legislation. In particular, the state court noted that BJS had changed the use of its property without obtaining prior approval. Consequently, in

granting a preliminary injunction enjoining BJS's continued operation without a permit, the state court judge reasoned that BJS's constitutional challenges to the adult-entertainment Ordinance were "not currently before the court." *City of Troy v. BJS No. 2, Inc.,* Miami Cty. C.P. No. 98–279 (Sept. 4, 1998). Accordingly, as set forth more fully, *infra,* the Court concludes that BJS's "as applied" challenge to the adult-entertainment legislation fails, because the state court simply did not "apply" the legislation to BJS. Rather, the state court merely affirmed the revocation of BJS's old zoning permit, based upon an improper change of use unrelated to the City's challenged legislation. As a result, BJS's loss of its zoning permit did not stem from the City's recently enacted Ordinance.

No. 0–8–97, vests City officials with "unbridled discretion" to grant or deny a conditional use permit. BJS also argues that the legislation fails to mandate a speedy decision on a conditional use application, and fails to ensure prompt judicial review of a permit denial. In light of these allegations, BJS has standing to raise a facial challenge to the constitutionality of Title Five. In *East Brooks Books, Inc. v. City of Memphis*, 48 F.3d 220, 224 (6th Cir.1995), the court acknowledged that " 'when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license.' " *Id.*, quoting *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 755–756, 108 S.Ct. 2138, 100 L.Ed.2d 771. Furthermore, the court recognized that "[f]ailure to place time limitations on a decision maker is a form of unbridled discretion." *Id.*, citing *Freedman v. Maryland*, 380 U.S. 51, 56–57, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). *See also FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 224, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (noting that when a provision creates a risk of delay, a facial challenge to the provision's constitutionality is proper, because "every application of the statute create[s] an impermissible risk of suppression of ideas"); *Freedman*, 380 U.S. at 56, 85 S.Ct. 734 ("In the area of freedom of expression it is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not his conduct could be proscribed by a properly drawn statute, and whether or not he applied for a license.").

In the present case, BJS has operated a cabaret-style nightclub featuring nude and semi-nude dancing since March 16, 1997. The day after Total Xposure opened to the public, the City amended its Ordinances,

enacting the legislation at issue. The City then revoked BJS's zoning permit on March 27, 1997, because it had changed the use of its property without first obtaining the City's approval. As a result, BJS now contends that it cannot obtain a new permit from the City without being subjected to its Ordinance No. 0–8–97, which includes the allegedly unconstitutional provisions.

In opposition to the foregoing argument, the Defendants suggest that BJS cannot maintain a facial challenge to the constitutionality of the City's adult-entertainment legislation because it currently lacks a valid zoning permit and, therefore, it is in violation of the zoning code for reasons unrelated to the adult-entertainment legislation. The Court finds this argument unpersuasive. Although BJS lost its former zoning permit for reasons wholly unrelated to the adult-entertainment legislation, that legislation now operates as a barrier preventing BJS from curing its lack of a zoning permit by obtaining a new permit. Consequently, under the facts of this case, BJS possesses standing to assert its facial challenge the constitutionality of Ordinance No. 0–8–97.

BJS alleges that the City's Ordinance operates as a prior restraint on activity protected by the First Amendment, without the requisite procedural safeguards. In *G & V Lounge, Inc. v. Michigan Liquor Control Com'n*, 23 F.3d 1071, 1075 (6th Cir.1994), the court recognized that a prior restraint on constitutionally protected activity constitutes "a concrete and particularized actual injury in fact." Furthermore, BJS's injury is actual and imminent. The City has enacted the Ordinance, and, as the Court explained above, BJS need not apply for a permit prior to challenging its constitutionality. In addition, the City's alleged prior restraint is directly traceable to its Ordinance, and the prior restraint is redressable by a ruling in BJS's favor.[8] As a result, BJS has set

---

8. Arguing against redressability, the Defendants contend that even if the Ordinance at issue is declared unconstitutional, such a ruling would have no effect on the state court's injunction ordering enforcement of BJS's permit revocation, which resulted from BJS's

forth facts and circumstances establishing a case or controversy, and it does not lack standing, under Article III, Section 2, of the U.S. Constitution, to challenge the facial validity of the City's Ordinance. *Cf. Baby Tam & Co., Inc. v. City of Las Vegas,* 154 F.3d 1097 (9th Cir.1998) ("Because, according to Baby Tam, the licensing/zoning ordinance vests the City with 'unbridled discretion' to deny a license, and because the ordinance lacks constitutionally required procedural safeguards, Baby Tam has standing to assert its facial challenge. In making this challenge, it contends the City's licensing and zoning ordinance is an unconstitutional prior restraint of speech.").

In a second "standing" argument, the Defendants contend BJS's Complaint is insufficient to support its challenge to the facial constitutionality of Ordinance No. 0–8–97. Specifically, they note that BJS's Complaint alleges "unbridled discretion" by City officials, but fails to allege that the City's Ordinance is "overbroad." The Defendants then cite *FW/PBS, Inc. v. City of Dallas,* 493 U.S. at 223, 110 S.Ct. 596, for the proposition that First Amendment-based facial challenges to legislation are permitted "where the licensing scheme vests unbridled discretion in the decisionmaker and where the regulation is challenged as overbroad." Given BJS's failure to allege "overbreadth," the Defendants contend it lacks standing to challenge the Ordinance.

The Court finds this argument unpersuasive. In *Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988), the Court recognized that "when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially . . . ." *Id.* at 755, 108 S.Ct. 2138; *See also Chesapeake B & M, Inc. v. Harford County,* 58 F.3d 1005, 1009–1010 (4th Cir.1995) (finding a facial constitutional challenge to a statute appropriate when the statute grants the decisionmaker "unbridled discretion" and lacks procedural safeguards ensuring a prompt decision). Contrary to the Defendants' reading of *FW/PBS v. City of Dallas,* "unbridled discretion" and "overbreadth" are alternative justifications for allowing a party to challenge the constitutionality of a statute "on its face." Consequently, the Court finds the Defendants' argument meritless.

The Defendants next insist that the Court should abstain from enjoining enforcement of the September 4, 1998, state court preliminary injunction, which prohibits BJS from operating its business without a valid zoning permit. However, the Court will address enjoinment of the state court ruling, *infra.* The Court's present analysis will focus upon the Plaintiff's attempt to enjoin enforcement of Troy's adult-entertainment legislation. The Defendants do not argue that the Court should abstain from resolving the Plaintiff's "facial" challenge to the constitutionality of Ordinance No. 0–8–97.[9] Accordingly, the abstention doctrine does not prohibit the Court's consideration of the Plaintiff's present constitutional claims.

In a third argument, the Defendants contend that the Court lacks jurisdiction to consider BJS's constitutional challenges, because the claims are not "ripe" for review. Initially, the Defendants raise this

---

unauthorized change of use, and not from enforcement of the adult-entertainment Ordinance. In this portion of its decision, however, the Court is considering whether the Ordinance unlawfully restrains BJS's present ability to obtain a *new* permit, and not whether it is relevant to BJS's loss of the former permit.

**9.** *See* Doc. # 19, Defendants' Memorandum in Opposition at 1 ("The court should abstain

from the state zoning issue."); *Id.* at 7 ("Accordingly, the federal court should abstain from enjoining the state court's ability to enforce its judgment on a different matter."); *Id.* at 10 ("Accordingly, pursuant to *Younger v. Harris* and its progeny, this court should abstain from interfering in the state court action which addresses all issues raised by the plaintiff.").

argument in the context of BJS's facial challenge to the constitutionality of the City's legislation. (Defendant's Memorandum in Opposition to Preliminary Injunction, Doc. # 18, incorporating by reference Defendant's Memorandum in Opposition to Temporary Restraining Order, Doc. # 19 at 10). Later in their argument, however, the Defendants acknowledge that the Court *might* possess jurisdiction to consider BJS's facial challenge (i.e., the facial challenge might be "ripe"). (*Id.* at 11). Upon review, the Court finds no "ripeness" issue precluding consideration of BJS's argument. The City has enacted its Ordinance, and BJS need not apply for, and be denied, a conditional use permit in order to challenge the Ordinance on First Amendment grounds. *Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. at 755–756, 108 S.Ct. 2138.

In a fourth argument, the Defendants ask the Court to sever any unconstitutional portions of the challenged legislation, while leaving other constitutional portions intact. (Doc. # 18 at 1–2). The Court will consider this argument *after* first determining BJS's likelihood of success on the merits of its constitutional challenge to the City's legislation. Finally, the Defendants argue that further judicial review of BJS's zoning permit revocation, based upon its unauthorized change of use, is precluded by *res judicata.* Consequently, the Defendants contend that BJS "cannot re-litigate the city's enforcement of its zoning code except those portions subject to First Amendment attack." As the Defendants recognize, however, *res judicata* does not preclude BJS from challenging the consti-

tutionality of the City's legislation, because the state court refused to consider that argument. Consequently, the Court turns now to the merits of BJS's Motion, insofar as it relates to the constitutionality of Ordinance No. 0–8–97 "on its face."

**B.** *Facial Constitutionality of Ordinance No. 0–8–97*

BJS argues that Title Five, as amended by Ordinance No. 0–8–97, violates the First Amendment by requiring a conditional use permit, issued by the Administrative Board, for all adult-entertainment facilities, without also providing adequate procedural safeguards. In light of these shortcomings, BJS argues that the City's Ordinance imposes a prior restraint on constitutionally protected expression (i.e., nude dancing), by conditioning all such expression upon prior approval from government officials.[10] In response, the Defendants raise no substantive argument challenging BJS's claims, suggesting instead that any invalid provisions should be severed from Ordinance No. 0–8–97.

After reviewing the record and applicable law, the Court finds BJS's arguments persuasive. A regulation or licensing requirement that imposes a prior restraint on expression protected by the First Amendment bears "a heavy presumption against its constitutional validity." *Freedman*, 380 U.S. at 57, 85 S.Ct. 734, quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963); *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 224 (6th Cir.1996). Furthermore, an ordinance

---

**10.** In *DLS, Inc. v. City of Chattanooga*, 107 F.3d 403, 408–409 (6th Cir.1997), the court rejected the premise that all nude dancing, as a matter of law, constitutes expressive activity protected by the First Amendment. Rather, the Sixth Circuit suggested that courts should determine, case by case, whether the expressive activity at issue implicates the First Amendment. In the present case, however, the Defendants have not suggested that Total Xposure's activity falls outside the scope of First Amendment protection. Consequently, the Court will presume, as did the Sixth Cir-

cuit in *DLS*, that the activity at issue is a constitutionally protected "'endorsement of erotic experience.'" *Id.* at 409, quoting *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 581, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (Souter, J., concurring in the judgment); *see also Threesome Entertainment v. Strittmather*, 4 F.Supp.2d 710, 717 (N.D.Ohio 1998) (recognizing that not all nude dancing constitutes protected speech, but assuming that the nude dancing at issue received First Amendment protection).

that imposes upon a proprietor the burden of obtaining a permit in order to engage in constitutionally protected activity is properly analyzed as a prior restraint. In *Baby Tam*, 154 F.3d at 1097, 1100, the court recently recognized that when a city ordinance "requires all proposed bookstores to apply for and obtain a license before engaging in business, the City's licensing scheme is properly analyzed as a prior restraint." Similarly, in *FW/PBS, Inc. v. City of Dallas*, 493 U.S. at 226, 110 S.Ct. 596, the Court opined that " 'an ordinance which ... makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.' " *Id.*, quoting *Shuttlesworth v. Birmingham*, 394 U.S. 147, 151, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969).

■ In order to survive constitutional scrutiny, regulations making the enjoyment of protected expression contingent upon government approval must contain at least two procedural safeguards. "[T]he licensor must make the decision whether to issue the license within a specified and reasonable time period during which the status quo is maintained, and there must be the possibility of prompt judicial review in the event that the license is erroneously denied." *Id.* at 228, 89 S.Ct. 935; *see also Baby Tam & Co., Inc. v. City of Las Vegas*, 154 F.3d 1097 (9th Cir.1998). These requirements "satisfy the 'principle that freedoms of expression must be ringed about with adequate bulwarks.' " *FW/PBS, Inc.*, 493 U.S. at 230, 110 S.Ct. 596, quoting *Bantam Books*, 372 U.S. at 66, 83 S.Ct. 631.

■■ In the present case, the City's legislation requires all adult-entertainment facilities to apply for and receive a conditional use permit *before* engaging in business. Consequently, the Court finds a prior restraint analysis appropriate. As noted above, such prior restraints are not uncon-

stitutional *per se*. After reviewing the City's legislation, however, the Court notes that it lacks the requisite procedural safeguards needed to withstand BJS's constitutional challenge.

### 1. *Unreasonable Decisionmaking Delay*

■ Title Five, as amended by Ordinance No. 0–8–97, does not require the Administrative Board to rule upon a conditional use permit application within a specific and prompt period of time. Section 1135.03(c)(3) requires the Administrative Board to conduct a hearing on a conditional use application within sixty days after the application is filed. Section 1135.03(c)(6) then requires the Board to issue a written decision on the application no later than 60 days after the hearing. Reading these two provisions in conjunction reveals that the legislation grants the Board 120 days to render a final decision on a conditional use permit application. Although the legislation requires a decision within a *specified* time, the Court concludes that the 120–day time limit is not *reasonable*, particularly when the delay impedes expression protected by the First Amendment. Relevant case law supports the Court's conclusion.

In *Cascade News, Inc. v. City of Cleveland*, 1992 WL 808790 (N.D.Ohio June 15, 1992) (Aldrich, J.), the court considered a constitutional challenge to a city ordinance that required licenses for operators of sexually explicit video and live viewing booths. Upon review, the court noted that the city's ordinance granted the licensor 66 days to complete an administrative review process and reach a final decision granting or denying a license. *Id.* at *5. The court reasoned that such a delay constituted an impermissible prior restraint. *Id.* In support of its conclusion, the *Cascade News* court relied upon *Teitel Film Corp. v. Cusack*, 390 U.S. 139, 88 S.Ct. 754, 19 L.Ed.2d 966 (1968). In that case, the Supreme Court determined that a 50 to 57–day administrative review process allowed

by ordinance did not assure that a decision would be reached within a "specified brief period" of time. *Id.* at 141, 88 S.Ct. 754.

Similarly, in *Avenue Grill, Inc. v. Rootstown Township,* No. 5:94CV67 (N.D. Ohio April 19, 1995) (O'Malley, J.), the court declared unconstitutional a city licensing scheme regulating the operation of "adult cabarets." The resolution at issue prohibited the operation of a cabaret without a permit. *Id.* at 5. It also required the submission of a written application by anyone wishing to operate a cabaret. *Id.* The resolution allowed sixty days for the city to grant or deny a license. *Id.* at 10–11. Upon review, the *Avenue Grill* court reasoned that "[t]his time period is simply too long to pass constitutional scrutiny." *Id.* at 11. In particular, the court concluded that the resolution did not compel the city to make a decision " 'within a specified and reasonable period' . . . and expressive activity is censored during the interim." *Id.,* quoting *FW/PBS, Inc. v. City of Dallas,* 493 U.S. at 228, 110 S.Ct. 596.

Viewed in light of the foregoing case law, the City's legislation appears unlikely to withstand BJS's constitutional challenge. Ordinance No. 0–8–97 grants the Administrative Board sixty days to hold a hearing and an additional sixty days to render a decision. As a result, the legislation authorizes a decisionmaking process lasting *twice* as long as the procedures deemed unconstitutional in *Cascade News* and *Avenue Grill.* Consequently, the Court finds a strong probability that the City's four-month prior restraint of constitutionally protected expression is unreasonable, and therefore, unconstitutional on its face. *Cf. FW/PBS,* 493 U.S. 215, 228, 110 S.Ct. 596, 107 L.Ed.2d 603 (recognizing that the decision whether to issue a license must be made within a specified and reasonable time period); *11126 Baltimore Boulevard, Inc. v. Prince George's County,* 58 F.3d 988, 997–998 (4th Cir. 1995) (finding a 150–day delay before a decision on an adult bookstore license not "reasonably brief" and, therefore, unconstitutional); *East Brooks Books,* 48 F.3d at 225 (finding a three to five-month delay for

judicial review of a permit denial unconstitutional).

### 2. *Lack of Prompt Judicial Review*

Ordinance No. 0–8–97 also appears incapable of passing constitutional muster, as it pertains to adult-entertainment facilities, for a second reason. It does not provide an avenue for prompt judicial review if the Administrative Board denies a conditional use permit. The parties have stipulated that permit denials must be appealed pursuant to Ohio Rev.Code Chapter 2506. Significantly, that legislation contains no provision requiring the state common pleas court to render a decision within *any* specific period of time. As a result, Ohio Rev.Code Chapter 2506 fails to provide the prompt judicial review needed to guard against a prolonged prior restraint of constitutionally protected expression. Once again, this conclusion is supported by relevant case law.

In *East Brooks Books,* 48 F.3d at 225, the Sixth Circuit reviewed a city ordinance requiring potential operators of sexually oriented businesses to apply for operator's permits. The court noted that under Tennessee law no definite time frame existed for judicial review of a permit denial. *Id.* The court then estimated that an applicant might be required to wait more than five months to obtain judicial review of the City's permit denial. *Id.* Finding this potential delay "impermissible," the Sixth Circuit held that the city's "licensing scheme fails to provide sufficient procedural safeguards and is unconstitutional." *Id.*

Likewise, in *J.L. Spoons v. City of Brunswick,* 18 F.Supp.2d 775 (N.D.Ohio 1998), the District Court addressed "prompt judicial review" under Ohio Rev. Code Chapter 2506. In that case, the plaintiffs sought to enjoin enforcement of a city ordinance that prohibited their operation of an "adult cabaret" without a license. Upon review, the District Court declared unconstitutional the ordinance's failure to provide for prompt judicial review of a license denial. In so doing, the court not-

ed that the ordinance required an applicant to appeal through Ohio Rev.Code Chapter 2506. The court then stated:

"Three federal courts, including this Court, in the Northern District of Ohio have ruled that the procedures provided for in Chapter 2506 do not provide a constitutionally adequate avenue of prompt judicial review with respect to a locality's decision to restrain protected expressive activity. *See Cleveland's P.M. on the Boardwalk v. City of Cleveland,* slip op., No. 1:92CV1412 (N.D. Ohio Aug. 12, 1992) (White, J.), vacated pursuant to settlement; *Cascade News, Inc., et al. v. City of Cleveland, et al.,* slip op., No. 1:92CV0758 (N.D. Ohio June 15, 1992) (Aldrich, J.); *Avenue Grill, Inc. v. Rootstown Township, et al.,* slip op., No. 5:94CV0067 (N.D. Ohio April 19, 1995) (O'Malley, J.). Plainly speaking, the process a denied applicant must go through before receiving a judicial decision on the merits simply takes too long. For example, § 2506.02 allows the officer or body from which the appeal is taken up to forty days to file a transcript of 'all the original papers, testimony, and evidence offered, heard, and taken into consideration in issuing the final order, adjudication, or decision appealed from.' Furthermore, Chapter 2506 does not require a court to rule on the merits of an appeal within a specified period of time; rather the appeal proceeds as any other civil action proceeds...."

The Court finds the *J.L. Spoons* analysis equally applicable in the present case, particularly in light of the Sixth Circuit's ruling in *East Brooks Books,* 48 F.3d at 225, which found a potential five-month delay impermissible. Ordinance No. 0–8–97 provides no mechanism for a conditional use permit applicant to receive prompt judicial review of an adverse Board decision. Rather, the applicant must proceed under Ohio Rev.Code Chapter 2506, which sets *no* time limit for judicial review. As a result, the City's legislation lacks a requisite procedural safeguard, insofar as it relates to adult-entertainment businesses seeking to engage in activities protected by the First Amendment. For that additional reason, the Court finds a substantial likelihood of success on the merits of BJS's claim against the Defendants.

### 3. *Lack of a Stay Pending Appeal*

■ BJS also argues that the City's legislation is unconstitutional because it fails to provide for a stay of enforcement pending appeal if the Administrative Board *denies* a conditional use permit. In support of this argument, BJS contends such stays are required whenever a city *revokes* or *suspends* a license. Regardless of whether a stay is constitutionally mandated when a city revokes or suspends a license under an adult-entertainment ordinance, however, the Sixth Circuit has found no stay required when a city merely denies a permit. In *East Brooks Books,* 48 F.3d at 225, the court expressly rejected BJS's argument: "[P]laintiffs contend that an applicant denied a permit must be allowed to operate pending judicial review. The status quo for a business seeking a permit to begin operating a sexually oriented business, however, is non-operation. The city, therefore, does not need to allow operation pending review." Consequently, the Court finds little likelihood that BJS will establish any constitutional infirmity arising from the failure of Ordinance No. 0–8–97 to provide for a stay when a conditional use permit is denied.

### 4. *Unbridled Discretion*

■ In a final argument, BJS contends Ordinance No. 0–8–97 unconstitutionally vests the Administrative Board with "unbridled discretion" to grant or deny a conditional use permit. "Unbridled discretion naturally exists when a licensing scheme does not impose adequate standards to guide the licensor's discretion." *Chesapeake B & M, Inc. v. Harford County,* 58 F.3d 1005, 1009 (4th Cir.1995). Conversely, "[f]or there to be an effective permit requirement, a municipality must provide narrowly drawn, objective, reason-

able, and definite standards to guide the administering officials." *15192 Thirteen Mile Rd. v. City of Warren,* 593 F.Supp. 147, 156 (E.D.Mich.1984), citing *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 151, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969).

BJS challenges language in § 1135.03(c)(4), as amended by Ordinance No. 0–8–97, which provides that the Administrative Board shall not grant a conditional use permit unless it makes specific findings of fact, based upon the evidence presented, to support a conclusion that:

"(C) The location and size of the conditional use, the nature and intensity of the operation involved or conducted in connection with it, the size of the site in relation to it, and the location of the site with respect to streets giving access to it shall be such that it will be in harmony with the appropriate and orderly development of the district in which it is located.

(D) The proposed conditional use will not cause substantial injury to the value of other property in the area in which it is located and will contribute to and promote the convenience and welfare of the public."

BJS contends these provisions subject its First Amendment rights to the uncontrolled will of Board members, who may issue or deny a permit with unfettered discretion. In particular, BJS challenges the language in subsection (C) requiring that various characteristics of the proposed conditional use "shall be such that it will be in harmony with the appropriate and orderly development of the district in which it is located." BJS also objects to the requirement in subsection (D) that the proposed conditional use "will not cause substantial injury to the value of other property in the area in which it is located" and "will contribute to and promote the convenience and welfare of the public."

As BJS properly notes, the City's legislation neither defines these phrases, nor provides any guidance for their interpretation and application.

Having reviewed the foregoing language, the Court finds a substantial likelihood that it is impermissibly indefinite and subjective. Sections 1135.03(c)(4)(C) and (c)(4)(D) appear to clothe the board with inordinate discretion to deny a conditional use permit on the basis of ambiguous criteria. Indeed, applying the foregoing standards, the Board conceivably might *never* issue a conditional use permit for an adult-entertainment facility. For example, subsection (C) requires the board, before granting a conditional use permit, to find that the location, size, nature, and intensity of the conditional use, as well as the size and location of the site, result in the proposed conditional use being in "harmony with the appropriate and orderly development of the district . . . ." Using these nebulous standards, the Board very well may never find a nude dancing cabaret in "harmony" with the "appropriate" development of the district. Likewise, under the guise of subsection (D), a Board may never find that an adult-entertainment facility promotes "the convenience and welfare of the public." Finally, the Ordinance fails to identify, with any particularity, the "substantial injury" to neighboring property values that will justify a permit denial. The Ordinance requires the Board to make factual findings on these issues, yet provides no objective criteria to guide the board in applying its facts to the legislation's requirements.[11] Therefore, even assuming that the Board members will endeavor to apply the foregoing standards fairly, subsections (C) and (D) appear to vest the Administrative Board with unbridled discretion to grant or deny a conditional use permit to adult-entertainment establishments. *Cf. East Brooks Books,* 48 F.3d at 226–227 (finding "unbridled discre-

---

11. The legislation's apparent lack of any definite, objective criteria also hinders potential operators of adult-entertainment establishments, who cannot determine beforehand whether their proposed businesses will be in "harmony" with the surrounding neighborhood.

tion" when a decisionmaker may deny a permit if an applicant "has demonstrated an inability to operate or manage a sexually oriented business premises in a peaceful and law-abiding manner, thus necessitating action by law enforcement officers"); *Franken Equities, L.L.C. v. City of Evanston,* 967 F.Supp. 1233, 1237 (D.Wyo.1997) (finding "unbridled discretion" when a decisionmaker may deny a conditional use permit to operate an adult video establishment unless the proposed use "is designed to be compatible with surrounding land uses and the area of its location"). As the Supreme Court recognized in *Forsyth County, Ga. v. Nationalist Movement,* 505 U.S. 123, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992):

> " '[A] law subjecting the exercise of First Amendment freedoms to the prior restraint of a license' must contain 'narrow, objective, and definite standards to guide the licensing authority.' ... The reasoning is simple: If the permit scheme 'involves appraisal of facts, the exercise of judgment, and the formation of an opinion,' ... by the licensing authority, 'the danger of censorship and of abridgment of our precious First Amendment freedoms is too great' to be permitted[.]"

*Id.* at 131, 112 S.Ct. 2395 (citations omitted).

In the present case, § 1135.03(c)(4)(C) and (c)(4)(D), as amended by Ordinance No. 0–8–97, are devoid of the guiding standards deemed essential by the Supreme Court. Accordingly, the Court finds a substantial likelihood that those provisions are unconstitutional on their face, as they relate to adult-entertainment facilities.

### C. *Severability*

▆▆▆▆ Given the Plaintiff's strong showing that portions of Ordinance 0–8–97 are unconstitutional, the Court now must consider the Defendants' argument regarding severability. In particular, the

Defendants appear to suggest that any unconstitutional portions of Ordinance No. 0–8–97 should be severed from the remainder of the Ordinance.[12] Severability of a local ordinance is a question of state law. *Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. at 772, 108 S.Ct. 2138. As a result, Ohio law governs whether the Court can sever the likely unconstitutional portions of Ordinance No. 0–8–97. Ohio Courts address the following three questions to determine whether constitutional and unconstitutional statutory provisions are severable:

> " '(1) Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is stricken out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect to the former only?' "

*State ex rel. Maurer v. Sheward,* 71 Ohio St.3d 513, 644 N.E.2d 369 (1994), quoting *Geiger v. Geiger,* 117 Ohio St. 451, 160 N.E. 28, 33 (1927). With the foregoing standards in mind, the Court finds certain Sections of Ordinance No. 0–8–97 severable from those portions that appear to be unconstitutional. Ordinance No. 0–8–97 contains seventeen separate Sections. After reviewing those Sections, the Court notes that most of them exhibit no apparent constitutional infirmity. In addition, they are capable of separation from the unconstitutional parts of the Ordinance, their enforcement does not defeat the apparent intention of the City legislature, and they may be given effect without the insertion of additional words or phrases. For purposes of clarity, the Court will briefly discuss, individually, each Section

---

12. The Defendants' substantive argument on this point is brief. The Defendants suggest, with little elaboration, that the Court should

sever any unconstitutional "licensing" provisions, while retaining valid "zoning" provisions. (*See* Doc. # 18 at 1–2).

of Ordinance 0–8–97, its constitutionality, and its potential severability.

### 1. *Section I*

This Section of Ordinance 0–8–97 defines the phrase "conditional use." Nothing about the definition appears unconstitutional, and the Court finds it severable under the three-part test set forth above.

### 2. *Section II*

This Section defines the phrase "adult-entertainment facility." Nothing about the definition appears unconstitutional, and the Court finds it severable under the three-part test set forth above.

### 3. *Section III*

This Section grants the City Administrative Board the power to hear and rule upon applications for conditional use permits. Nothing about this Section appears unconstitutional, and the Court finds it severable under the three-part test set forth above.

### 4. *Section IV*

This Section enacts various requirements for the placement of adult-entertainment establishments within the City. Among other things, it provides that such facilities may not be located within: (1) 500 feet of any Residence, Office–Residence, and/or Office–Commercial Zoning District; (2) a 1,000 foot radius of any school, library, or teaching facility that is attended by minors; (3) a 1,000 foot radius of any park or recreational facility that is attended by minors; (4) a 1,000 foot radius of any permanently established place of religious services that is attended by minors, or within a 1,000 foot radius of certain day care centers or day care homes; (5) a 1,000 foot radius of another adult-entertainment facility, or within a 1,000 foot radius of any two other enumerated establishments.

Upon review, the Court finds nothing facially unconstitutional about Section IV. It is well settled that adult-entertainment facilities may be relegated to certain areas of the City, and furthermore, that various restrictions may be placed upon the operation of such facilities. Such time, place, and manner regulations withstand constitutional scrutiny, provided that they meet certain requirements. In particular, such regulations must be content-neutral and aimed at the secondary effects of adult-entertainment businesses. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46–47, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). They also must serve a substantial government interest, allow for reasonable alternative means of communication, and be narrowly tailored. *Id.* at 50–52, 106 S.Ct. 925. Provided that the foregoing requirements are met, the City may prohibit adult-entertainment operations near residential areas, schools, churches, etc., consistent with *Renton.* On its face, nothing about Section IV suggests that it violates the foregoing requirements for valid time, place, and manner restrictions.

The Court also notes that Section IV is capable of operating by itself, apart from the unconstitutional portions of Ordinance 0–8–97, which designate adult-entertainment facilities as "conditional uses" and appear to subject them to unlawful prior restraints. Furthermore, separating Section IV from the unconstitutional parts of the Ordinance would not defeat the clear intention of the City legislature. To the contrary, the City legislature plainly intended to restrict the operation of adult-entertainment establishments by (1) designating them as "conditional uses" subject to prior approval from the City, and by (2) keeping them a specified distance from various other establishments. The Court cannot envision the City intending to abandon the location requirements of Section IV simply because it may not license adult-entertainment establishments as "conditional uses." Rather, the Court is convinced that the City intended to regulate adult-entertainment in any way possible, and that it would have enacted Section IV, even without the suspect "conditional use" provisions. Consequently, even if the Ordinance's "conditional use" provisions are facially unconstitutional, as they relate to

adult-entertainment facilities, the City's intentions may be given partial effect by finding Section IV severable and upholding its location requirements. Finally, the Court notes that Section IV may be separated from the likely infirm portions of the Ordinance without the insertion of additional words or phrases. Therefore, the Court finds Section IV severable under the three-part test set forth in *State ex rel. Maurer v. Sheward,* 71 Ohio St.3d 513, 644 N.E.2d 369 (1994), and *Geiger v. Geiger,* 117 Ohio St. 451, 160 N.E. 28, 33 (1927).

### 5. *Section V*

This Section merely repeals the former version of § 1135.03 of the Codified Ordinances of the City of Troy. Nothing about this Section appears unconstitutional, and the Court finds it severable under the three-part test set forth above.

### 6. *Section VI*

This Section enacts a new § 1135.03 of the Codified Ordinances of the City of Troy. The new version of § 1135.03 pertains to the issuance of variances and conditional use permits. As the Court explained more fully in its substantive analysis of § 1135.03(c), *supra,* this legislation fails to require a prompt decision on a conditional use permit application. It also fails to provide for prompt judicial review, and fails to limit the discretion of the City's decisionmakers. For these reasons, the Court has found a substantial likelihood that § 1135.03, as amended by Section VI of Ordinance 0–8–97, is unconstitutional, insofar as it purports to

regulate adult-entertainment establishments.[13]

### 7. *Section VII*

This Section merely repeals the former version of § 1135.04(a) of the Codified Ordinances of the City of Troy. Nothing about this Section appears unconstitutional, and the Court finds it severable under the three-part test set forth above.

### 8. *Section VIII*

This Section enacts a new § 1135.04(a) of the Codified Ordinances of the City of Troy. This new legislation allows the City Administrative Board to hear and decide applications for appeals from decisions of the Zoning Inspector. Nothing about this Section appears unconstitutional, and the Court finds it severable under the three-part test set forth above.

### 9. *Section IX*

This Section merely repeals the former version of § 1135.04(d) of the Codified Ordinances of the City of Troy. Nothing about this Section appears unconstitutional, and the Court finds it severable under the three-part test set forth above.

### 10. *Section X*

This Section enacts a new § 1135.04(d) of the Codified Ordinances of the City of Troy. This new legislation grants the City Administrative Board the power to hear and decide applications for variances. Nothing about this Section appears unconstitutional, and the Court finds it severable under the three-part test set forth above.

---

**13.** Although the Court finds a substantial likelihood that portions of Ordinance No. 0–8–97 are unconstitutional as they purport to regulate adult-entertainment establishments, this finding should not be construed as addressing the constitutionality of the Ordinance "as applied." As noted herein, the new adult-entertainment legislation has not yet been "applied" to BJS, because the company has not yet sought a permit under the new Ordinance. Rather, as stated above, BJS has mounted a "facial" challenge to the constitutionality of the legislation, which purports to regulate many types of businesses. In the present case, however, the Court need not pass upon the constitutionality of Ordinance No. 0–8–97 as it purports to regulate other types of businesses, including businesses whose activities do not implicate First Amendment concerns. Rather, because the present case involves an entity which engages in adult-entertainment, the Court is required only to determine the facial constitutionality of Ordinance No. 0–8–97, insofar as it seeks to regulate adult-entertainment establishments.

**11. *Section XI***

This Section merely repeals the former version of § 1135.05(a) of the Codified Ordinances of the City of Troy. Nothing about this Section appears unconstitutional, and the Court finds it severable under the three-part test set forth above.

**12. *Section XII***

This Section enacts a new § 1135.05(a) of the Codified Ordinances of the City of Troy. This legislation requires a concurring vote of two-thirds of the members of the City Administrative Board in order to reverse or modify decisions of the City Zoning Inspector. Nothing about § 1135.05(a) appears unconstitutional, and the Court finds it severable under the three-part test set forth above.

**13. *Section XIII***

This Section merely repeals the second paragraph of the former version of § 1137.04 of the Codified Ordinances of the City of Troy. Nothing about this Section appears unconstitutional, and the Court finds it severable under the three-part test set forth above.

**14. *Section XIV***

This Section enacts a new § 1137.04 of the Codified Ordinances of the City of Troy. This legislation provides for the proper zoning of all new land annexed to the City of Troy. Nothing about this Section appears unconstitutional, and the Court finds it severable under the three-part test set forth above.

**15. *Section XV***

This Section merely repeals the former version of § 1143.02(b)(2) of the Codified Ordinances of the City of Troy. Nothing about this Section appears unconstitutional, and the Court finds it severable under the three-part test set forth above.

**16. *Section XVI***

This Section enacts a new § 1143.02(b)(2) of the Codified Ordinances of the City of Troy. Section 1143.02(b)(2) allows adult-entertainment facilities only as "conditional uses" in "M–2 Heavy Industrial Districts." As a result, such facilities are subjected to the challenged review procedures and alleged prior restraints imposed by Section VI of Ordinance No. 0–8–97, which sets forth the constitutionally suspect procedure for obtaining a conditional use permit. Consequently, insofar as Section XVI relates to adult-entertainment facilities, the Court finds a substantial probability that it is unconstitutional on its face.

**17. *Section XVII***

This Section declares that Ordinance No. 0–8–97 is an emergency measure "necessary for the public peace, health, and safety of the citizens of the City of Troy," and that it shall take effect immediately upon adoption and approval by the Mayor. Nothing about this Section appears unconstitutional, and the Court finds it severable under the three-part test set forth above.

In conclusion, BJS has failed to demonstrate a substantial probability that Sections I, II, III, IV, V, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, and XVII of Ordinance No. 0–8–97 cannot be severed from the constitutionally suspect portions of the Ordinance. On the other hand, the Court does find a substantial likelihood that Sections VI and XVI of Ordinance No. 0–8–97 are unconstitutional on their face, insofar as they purport to regulate adult-entertainment establishments, and that they are, therefore, unenforceable.

Based upon the foregoing analysis, the Court finds a substantial likelihood that BJS will succeed on the merits of its facial challenge to the constitutionality of Title Five, as amended by Ordinance No. 0–8–97, Sections VI and XVI. Consequently, the first prong of the Court's four-part preliminary injunction analysis militates in favor of sustaining the Plaintiff's Motion, insofar as it challenges the constitutionality of the adult-entertainment legislation on its face. Furthermore, because the foregoing portions of the City's

legislation appear to infringe upon First Amendment rights, the Court readily finds irreparable harm. *Elrod v. Burns,* 427 U.S. 347, 353, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *United Food v. Southwest Ohio Regional Transit,* 163 F.3d 341, 363 (6th Cir.1998), citing *Newsom v. Norris,* 888 F.2d 371, 378 (6th Cir.1989), for the proposition that "even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief." As a result, the second part of the Court's analysis also weighs in favor of the Plaintiff. The Court also finds that the potential harm to the Plaintiff if a preliminary injunction is denied outweighs the potential harm to the Defendants if an injunction is granted. After balancing the equities in the present case, the Court finds that this factor strongly favors the Plaintiff. In short, the Court has no difficulty concluding that potential harm to the Plaintiff, in the form of a prior restraint on its constitutionally protected activity, outweighs any harm to the Defendant that may arise as a result of its inability to enforce constitutionally suspect legislation. Finally, with respect to the fourth preliminary injunction factor, the Court notes that preventing the City's infringement upon constitutionally protected expression undeniably serves the public interest. *Cf. Playboy Enterprises v. Meese,* 639 F.Supp. 581, 587 (D.D.C.1986) (recognizing that "[i]t is in the public interest to uphold a constitutionally guaranteed right").

For the reasons set forth above, the Court sustains BJS's Motion for a Preliminary Injunction (Doc. # 17), to the extent that the Motion seeks to enjoin the Defendants from enforcing Sections VI and XVI of Ordinance No. 0–8–97 against adult-entertainment facilities.

## IV. *Enjoining Enforcement of the State Court Preliminary Injunction*

BJS also seeks to enjoin the Defendants from enforcing the September 4, 1998, state court preliminary injunction that prohibits it from operating Total Xposure without a zoning permit. In support of its request, BJS argues that Title Five, as amended, is unconstitutional, not only on its face, but also "as applied" by the Miami County Common Pleas Court.

Upon review, however, the Court finds unpersuasive the Plaintiff's argument regarding the constitutionality of the City's adult-entertainment legislation "as applied" by the Miami County Common Pleas Court. The record reflects that BJS lost its zoning permit on March 27, 1997. The Miami County Common Pleas Court affirmed the permit revocation on December 1, 1997. In its ruling, the court found revocation proper because BJS had changed the use of its property without first obtaining the City's approval. The court's revocation decision *did not* implicate the City's adult-entertainment Ordinance, and BJS continued operating Total Xposure without a permit, despite the court's ruling. Ultimately, the City sought injunctive relief in the Miami County Common Pleas Court, seeking to enjoin BJS from further operation without a zoning permit. In response, BJS raised, as a defense, the alleged unconstitutionality of Ordinance No. 0–8–97. The state court refused to consider BJS's constitutional arguments, however, noting that BJS's "constitutional deficiency" claims were "not currently before the Court." *City of Troy v. BJS No. 2, Inc.,* Miami Cty. C.P. No. 98–279 (Sept. 4, 1998).

After reviewing the record, this Court agrees with the state court's determination. Without question, Title Five, as amended by Ordinance No. 0–8–97, hampers BJS's ability to obtain a *new* zoning permit. Indeed, the impediment created by the legislation justifies BJS's present challenge to its facial constitutionality. The Court finds no evidence, however, suggesting that the new legislation contributed to BJS's *loss* of its *old* permit. To the contrary, the state common pleas court affirmed the City's permit revocation solely based upon BJS's failure to comply with the City's change-of-use requirements. *See James Cook, et al. v. City of Troy*

819

*Administrative Board of Appeals,* Miami Cty. C.P. No. 97–312 (Dec. 1, 1997). That non-compliance in no way implicates the City's adult-entertainment Ordinance. Consequently, the Court agrees that BJS's "constitutional deficiency" arguments were irrelevant in the context of the state court injunction proceedings, during which BJS was enjoined from further operation without a zoning permit. BJS's constitutional arguments are relevant only in the context of its anticipated application for a *new* permit—a context which the Court has thoroughly addressed, *supra,* in its analysis of the Plaintiff's "facial" challenge to the constitutionality of Ordinance No. 0–8–97.

In short, the state court did not "apply" the new adult-entertainment legislation to BJS when it revoked the old zoning permit and enjoined continued operation without such a permit. Rather, the loss of BJS's old zoning permit resulted from circumstances wholly unrelated to the adult-entertainment legislation currently at issue. Consequently, the Court discerns no basis for enjoining enforcement of the September 4, 1998, state court preliminary injunction that prohibits Total Xposure from operating without a zoning permit. Therefore, the Court finds little probability of success on the merits of BJS's action to enjoin enforcement of the state court preliminary injunction. Regardless of the adult-entertainment legislation's potential unconstitutionality, that legislation did not influence the state court's *revocation* of BJS's zoning permit. Additionally, the Court finds no irreparable injury to BJS as a result of the state court injunction. As the Court explained above, the injunction only enforces the revocation of BJS's former zoning permit, an event which occurred long ago for reasons unrelated to the City's adult-entertainment legislation. Even if enforcement of the state court injunction causes BJS to cease operating temporarily while it seeks a new permit, that "injury" is not attributable to the

adult-entertainment law, and it certainly is no different than the "injury" suffered by any other business operating without a valid zoning permit in the City of Troy. Moreover, any impact on BJS's freedom of expression is merely incident to its failure to comply with the requisite change-of-use requirements, and therefore, of its own creation. Although the issuance of a preliminary injunction in the present case, with regard to the state court injunction, may not cause substantial harm to others, the public interest would not be served by enjoining state proceedings, when BJS lacks any likelihood of success on the merits, or any irreparable injury, and when BJS has violated a valid zoning requirement unrelated to adult-entertainment. For these reasons, the Court overrules BJS's Motion for a Preliminary Injunction (Doc. # 17), to the extent that it seeks to enjoin enforcement of the Miami County Common Pleas Court's September 4, 1998, preliminary injunction.[14]

Given the substantial likelihood, however, that Sections VI and XVI of Ordinance No. 0–8–97 are unconstitutional on their face, insofar as they purport to regulate adult-entertainment, and the Court's issuance of a preliminary injunction with respect to those portions of the Ordinance, the City may not require the Plaintiff to comply with those two provisions in order to obtain a new permit for its business.

V. *Conclusion*

Based upon the foregoing analysis, the Plaintiff's Motion for a Preliminary Injunction (Doc. # 17) is SUSTAINED in part and OVERRULED in part. The Defendants will be preliminarily enjoined from enforcing Sections VI and XVI of Ordinance No. 0–8–97, as incorporated into Title Five of the Codified Ordinances of the City of Troy, against adult-entertainment establishments until further order of the Court. The Court overrules the Plaintiff's

14. Given this conclusion, the Court need not address the Defendants' various jurisdictional and procedural challenges to the enjoinment

of the state court preliminary injunction (i.e., standing, abstention, ripeness, severability, and *res judicata* ).

Motion for a Preliminary Injunction, however, to the extent that it seeks to enjoin enforcement of the Miami County Common Pleas Court's September 4, 1998, preliminary injunction. Pursuant to Fed. R.Civ.P. 65(c), bond will be set in the amount of $1.00. This Court's preliminary injunction directed toward portions of Ordinance No. 0–8–97 will become effective, and the existing TRO enjoining the City's enforcement of Ordinance No. 0–8–97 through the issuance of criminal complaints, civil citations, or orders (Notation Entry, Doc. # 16) will be dissolved, upon the Plaintiff's payment of the one-dollar bond requirement set forth above. Finally, the Court hereby sets aside the previously issued temporary restraining order enjoining enforcement of the Miami County Common Pleas Court's September 4, 1998, preliminary injunction.

Counsel listed below will take note that a telephone conference call has been set for Thursday, August 5, 1999, at 11:30 a.m., to discuss further procedures leading to the resolution of this litigation.