**HARTFORD ACCIDENT AND INDEMNITY COMPANY, et al., Plaintiffs,**

v.

**SWISS REINSURANCE AMERICA CORPORATION, Defendant.**

**Swiss Reinsurance America Corporation, Plaintiff,**

v.

**Hartford Accident And Indemnity Company, et al., Defendant.**

**Nos. 99 Civ. 9453(JSR), 99 Civ. 9475(JSR).**

United States District Court, S.D. New York.

March 6, 2000.

David Raim, William Perry, Washington, DC, for plaintiffs.

Robert Bodian, New York City, Bert Rein, Richard, McConnell, Sandra Tvarian Stevens, Washington, DC, for defendants.

## MEMORANDUM AND ORDER

RAKOFF, District Judge.

For more years than one might have imagined likely, the large insurance companies that are the parties to this lawsuit have been squabbling like schoolchildren over how to arbitrate disputes that both sides agree are subject to arbitration. On the one side is the Hartford Accident & Indemnity Company together with a number of its affiliates [1] (collectively referred to here as "Hartford"), which, over a period of years, paid out tens of millions of dollars on environmental pollution claims. On the other side is the Swiss Reinsurance America Corporation ("Swiss Reinsurance"), which, pursuant to a series of Blanket Casualty Treaty contracts dating back to 1924 (the "blanket contracts"), agreed to reinsure Hartford for certain liabilities.

After haggling for many years over what portions, if any, of Hartford's environmental pollution claims were covered by the blanket contracts and, if so, how Swiss Reinsurance's consequent liability was to be calculated, both sides demanded arbitration pursuant to mandatory arbitration clauses in each of the blanket contracts. But each side refused to participate in the arbitration demanded by the other side. A lawsuit followed that was settled pursuant to an agreement (the "1998 Settlement Agreement") that resolved certain of the parties' differences but once again referred to arbitration numerous remaining disputes over coverage and calculation. Both sides duly filed renewed arbitration demands in March, 1999; but each side once again refused to participate in the arbitration demanded by the other side. The instant lawsuits followed, with each side seeking to compel arbitration according to its demand and to enjoin arbitration as demanded by the other side.

The central dispute underlying these now-consolidated lawsuits is over whether each of Hartford's pending claims for reimbursement by Swiss Reinsurance is subject to separate arbitration or whether the arbitration panel must first decide a calculation issue that Hartford contends is common to all such claims, both pending and prospective.[2] As characterized by Hartford, the allegedly common issue is "whether an Environmental Claim that is allocated by Hartford to two or more underlying Hartford policy periods must be allocated and billed to the [blanket contracts] on the basis of one limit and retention per occurrence for each such underlying policy period, one limit and retention per occurrence for all such underlying policy periods, or on some other basis." Hartford Ex. 8.

Hartford argues, in effect, that resolving this common issue at the outset will streamline the entire process, at considerable savings. Swiss Reinsurance argues that the issue is not necessarily common to all the claims, that other disputed issues will still require arbitration of each claim, and that some of the claims to which Hartford seeks to apply the determination of the alleged common issue are prospective

1. Hartford Live Stock Insurance Co., Hartford Fire Insurance Co., Hartford Casualty Insurance Co. and its predecessor Citizens Insurance Co. of New Jersey, Twin City Fire Insurance Co., Hartford Underwriters Insurance Co. and its predecessor New York Underwriters Insurance Co., Hartford Life Insurance Co., Columbian National Life Insurance Co., Pacific Insurance Co., Ltd., Hartford Insurance Co. of Canada and its predecessor London & Edinburgh General Insurance Co., Great Eastern Insurance Co., London–Canada Insurance Co., Sentinel Insurance Co., Ltd., Hartford Insurance Co. of the Midwest, Hartford Insurance Co. of the Southeast, Hartford Lloyd's Insurance Co., Nutmeg Insurance Co., Hartford Insurance Co. of Illinois, and Trumbull Insurance Co. and its predecessor Hartford Insurance Co. of Alabama.

2. After much procedural wrangling, the parties agreed that, in any event, a single arbitration panel would decide all the pending claims and that the panel would consist of two previously-named arbitrators and a former federal judge to be named by the Court. By order dated January 12, 2000, the Court appointed Marvin E. Frankel, Esq. as this third arbitrator.

or speculative in nature or otherwise unripe for arbitration. Indeed, Swiss Reinsurance, in its lawsuit, demands arbitration at this point of only a single, though large, claim, the so-called "Reichhold Chemical Claim." Hartford responds that this is simply a stalling tactic. And so on it goes.

■ The Court need not resolve these competing arguments because whatever abstract merit there might be to having the arbitrators make a global determination of the allegedly common calculation issue, this is not what Swiss Reinsurance agreed to when it entered into the blanket contracts and the 1998 Settlement Agreement. Rather, the parties simply agreed that if a dispute arose with respect to a given pending claim, that particular dispute regarding that particular claim would be submitted to arbitration.

It is true that some of the blanket contracts contain arbitration clauses that state in general terms that "in the event of any difference arising between the contracting parties it shall be submitted to arbitration." Hartford Ex. 2 Art. II ¶ 1; Hartford Ex. 3 Art. VI ¶ 1. But Swiss Reinsurance's obligation to make payment to Hartford under any of these contracts is not triggered until Hartford, having paid the underlying insured, bills Swiss Reinsurance for its claimed portion, and the arbitration clause must be read in the context of this obligation. Otherwise, the arbitrators would be placed in the strange and difficult position of having to decide in the abstract a hypothetical dispute regarding some prospective claim that had not yet ripened and might never do so—an exceedingly unlikely arrangement for the parties to agree to.

In the other blanket contracts, the limitation of the arbitration to disputes particular to specific pending claims is made more explicit. See, e.g., Hartford Ex. 4, Art. XVII ¶ 1 ("if any dispute shall arise between the Company and the Reinsurer with reference to the interpretation of this Agreement or their rights *with respect to any transaction involved* ... such dispute,

upon the written request of either party, may be submitted to three arbitrators ....") (emphasis supplied). Any remaining ambiguity on this score is clarified, moreover, by the overarching 1998 Settlement Agreement, which provides that "either Hartford or [Swiss Reinsurance] may submit disputed Environmental Reinsurance Claims to arbitration in accordance with the written arbitration agreements contained in the [blanket contracts]...." Perry Aff. ¶ 7 (reproducing the 1998 Agreement, at ¶ 4(b)). "Environmental Reinsurance Claims" is defined under this Agreement to mean, in effect, claims actually billed. See McConnell Aff. ¶ 5 (reproducing ¶ 1(p) of the 1998 Settlement Agreement defining "Environmental Reinsurance Claims" as "all Claims asserted by Hartford against [Swiss Reinsurance or its affiliate] under the [blanket contracts] for Loss, Claim Expenses, and Declaratory Judgment Expenses arising from Environmental Claims [paid by Hartford].").

Nowhere in any of these documents, by contrast, is there the slightest suggestion that the parties have agreed to have the arbitrators decide abstract disputes without reference to an actual, specific claim or transaction. Rather, the scope of the arbitration, like the scope of the reinsurance itself, is limited to existing, concrete claims and disputes relating to such claims. Thus, it is only such arbitration that can be demanded and enforced. See *Progressive Casualty Insurance Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 45 (2d Cir.1993).

■ The Court is mindful that "unless it can be said with positive assurance that [an] arbitration clause is not susceptible of a plausible interpretation that covers the asserted dispute, the dispute should be submitted to arbitration." *Arbitration Between Chung and Smith*, 943 F.2d 225, 229–30 (2d Cir.1991) (internal quotation marks and citations omitted). But such a presumption does not empower courts to order arbitration of matters outside the

scope of the parties' agreement to arbitrate. *See, e.g., Chicago Typographical Union v. Chicago Sun–Times,* 935 F.2d 1501 (7th Cir.1991) (agreement to arbitrate "disagreement" as to contract interpretation was not triggered by a disagreement as to the powers one side held under a particular contractual provision, where that disagreement was reflected only in a supposed "final offer" made by one side in contract negotiations and the terms of that offer had not yet been implemented); *Alpha Beta Co. v. Retail Store Employees Union, Local,* 671 F.2d 1247 (9th Cir.1982) (agreement to arbitrate "disputes" and "differences of opinion" over interpretation of a contract was not triggered by disagreement over the meaning of a provision where the grievance procedures relating to the disagreement had already been resolved, so the arbitration sought would relate only to potential future conflicts).

For the foregoing reasons, the Court, by Order dated January 12, 2000, denied so much of Hartford's demand as sought initial arbitration of the "global" calculation issue allegedly common to all of its claims (both pending and prospective) against Swiss Reinsurance (Count One of Hartford's demand) and as sought arbitration of all aspects of certain prospective claims not yet billed to Swiss Reinsurance (Count Three), but granted that portion of Hartford's demand as sought to compel arbitration of those claims actually billed to Swiss Reinsurance (Count Two[3]), as well as Swiss Reinsurance's demand for arbitration of the Reichhold Chemical claim.

The Order further provided that "[t]he permitted arbitrations are to proceed claim-by-claim." In a subsequent motion seeking clarification or reconsideration, Hartford urged the Court either to consolidate the separate arbitration proceedings or to permit the arbitration panel discretion to do so in order that that panel, if it chose, might still first decide the allegedly common calculation issue on a global basis. As to consolidation by this Court, the Second Circuit has expressly rejected the notion that district courts have power to order such consolidation in the name of efficiency over a party's opposition if the arbitration agreement does not provide for such consolidation. *Government of the United Kingdom v. Boeing Co.,* 998 F.2d 68 (2d Cir.1993) (denying Great Britain's motion to consolidate related arbitration proceedings on the ground parties had not contracted for such consolidation and the FAA did not grant authority for it, and noting that courts may not impose their own views of economy in such contexts); *see also Home Insurance v. New England Reinsurance,* 1999 WL 681388 (S.D.N.Y. Aug.31, 1999) (denying reinsurance company's motion to consolidate four arbitration demands against the same insurer). But at oral argument on the original motions, Swiss Reinsurance expressly consented to the arbitration panel's retaining discretion to consolidate any two or more of the pending claims so long as this was not to be taken as consenting to the panel's abstractly deciding, without any reference to any pending claim, the allegedly "global" calculation issue. *See* 12/17 Tr. at 19–20, 25–26; 12/20 Tr. at 2–3. Thus, on the parties' consent, the panel may consolidate as many pending claims as it chooses, provided that it does not thereupon undertake to decide any issues with reference to any other claims, pending or prospective, that are not before the panel.[4]

---

3. To the extent Count Two can be read as demanding arbitration of claims not yet billed to Swiss Reinsurance, it is denied.

4. Of course, the arbitrators' determination of any calculation issues raised in connection with the first claims they consider will undoubtedly provide guidance to the parties as to how the arbitrators are likely to decide these issues in reference to any subsequent claims they consider. As this illustrates, this whole extended controversy between the parties is more over form than substance, and the Court is very hopeful that the arbitrators will not permit the parties further to delay reaching the merits.

In summary, the Court's order of January 12, 2000 is hereby reconfirmed, and Hartford's motion of January 24, 2000 for reconsideration is denied, but its request for clarification is granted to the extent set forth in the immediately preceding paragraph. Further, the Court will retain jurisdiction over these consolidated cases in order to address any post-arbitration issues that may arise, *see, e.g., CPR v. Spray*, 187 F.3d 245, 253 (2d Cir.1999); *North River Insurance Co. v. Philadelphia Reinsurance Corp.*, 63 F.3d 160, 164 (2d Cir.1995), and for this purpose the court-appointed arbitrator is directed to periodically advise the Court of the status of the arbitrations. Finally, pending such further proceedings, if any, the Clerk of the Court is directed to place these matters on the Court's Suspense Calender.

SO ORDERED