246 F.3d 219 (2nd Cir. 2001)
 HARTFORD ACCIDENT AND INDEMNITY COMPANY, HARTFORD FIRE INSURANCE COMPANY, HARTFORD CASUALTY INSURANCE COMPANY, for itself and as successor to Citizens Insurance Company of New Jersey, TWIN CITY FIRE INSURANCE COMPANY, HARTFORD UNDERWRITERS INSURANCE COMPANY, for itself and as successor to New York Underwriters Insurance Company, HARTFORD LIFE INSURANCE COMPANY, HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, PACIFIC INSURANCE COMPANY, LTD., HARTFORD INSURANCE COMPANY OF CANADA, for itself and as successor to London & Edinburgh General Insurance Company, GREAT EASTERN INSURANCE COMPANY, LONDON CANADA INSURANCE COMPANY, SENTINEL INSURANCE COMPANY, LTD., HARTFORD INSURANCE COMPANY OF THE MIDWEST, HARTFORD INSURANCE COMPANY OF THE SOUTHEAST, HARTFORD LLOYD'S INSURANCE COMPANY, NUTMEG INSURANCE COMPANY, HARTFORD INSURANCE COMPANY OF ILLINOIS, and TRUMBULL INSURANCE COMPANY, fka HARTFORD INSURANCE COMPANY OF ALABAMA, Plaintiffs-Counter-Defendants-Appellants,
v.
SWISS REINSURANCE AMERICA CORPORATION, Defendant-Counter-Claimant-Appellee.
 Docket Nos. 00-7149(L), 00-7150(CON)
 UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
 Argued: Sept. 14, 2000
 Decided: April 16, 2001
 
 William K. Perry, Chadbourne & Parke LLP, Washington, DC (David M. Raim, Carey G. Child, Samantha Miller, Of Counsel), for Appellants.
 Bert W. Rein, Wiley, Rein & Fielding, Washington, DC (Richard L. McConnell, Sandra T. Stevens, Of Counsel, and Robert I. Bodian, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., New York, NY, Of Counsel), for Appellee.
 Before: WALKER, Chief Judge, and CABRANES and PARKER, Circuit Judges.
 PARKER, Circuit Judge:
 
 
 1
 Plaintiffs-Appellants Hartford Accident & Indemnity Company and certain of its numerous affiliates (collectively "Hartford") appeal from two orders of the United States District Court for the Southern District of New York (Jed S. Rakoff, Judge), dated January 12, 2000 and March 6, 2000, respectively, granting in part and denying in part Hartford's motion to compel arbitration of claims against Defendant-Appellee Swiss Reinsurance America Corporation ("SRA") pursuant to the terms of a series of "Blanket Casualty Treaty" reinsurance contracts between the parties and the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA").[1] See Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp., 87 F. Supp. 2d 300 (S.D.N.Y. 2000). Because we conclude that all of Hartford's claims fall within the scope of the applicable arbitration clauses and that SRA has consented to consolidation of certain claims before a single arbitration panel, we hold that the district court should have compelled arbitration of all of Hartford's claims in the manner delineated below.
 
 I. BACKGROUND
 
 2
 Hartford, an insurance company, commenced this action to compel arbitration of claims against SRA, a reinsurance company. The claims arise out of a series of "Blanket Casualty Treaty" contracts (the "blanket contracts") covering the period 1924 through 1983, under which SRA agreed to reinsure Hartford for certain liabilities. The liabilities at issue in the instant litigation concern sums paid by Hartford to its various insureds for environmental pollution claims.
 
 A. Dispute Resolution History
 
 3
 After negotiations failed to resolve the parties' dispute over whether and to what extent SRA owed reimbursement to Hartford, both sides demanded arbitration pursuant to mandatory arbitration clauses[2] in each of the blanket contracts. Hartford demanded arbitration to resolve the disputes over numerous unpaid claims; by contrast, SRA demanded arbitration of only one claim, which involved reimbursement to Hartford for amounts paid to Reichhold Chemicals. Hartford and SRA refused to participate in the arbitration demanded by the other, and each party filed an action in the Southern District of New York to compel arbitration under its own terms. The parties eventually settled that action pursuant to an agreement (the "1998 Agreement"), which resolved certain non-pollution claims and provided a framework for negotiations over an alternative dispute resolution procedure for resolving the pollution claims. The 1998 Agreement also provided that if such negotiations were unsuccessful, then either party could demand arbitration "in accordance with the written arbitration agreements contained in the [blanket] contracts."
 
 
 4
 In March 1999, the parties exchanged renewed arbitration demands, but each refused (again) to participate in the arbitration demanded by the other. On September 3, 1999, the parties filed the instant civil actions below, which the district court consolidated.
 
 
 5
 In its action (No. 99-CV-9453), Hartford sought, inter alia, to compel arbitration of the following:
 
 
 6
 Count 1 A difference or dispute has arisen between the parties regarding the manner in which the [blanket contracts] respond to Environmental Claims. This difference or dispute is raised with respect to numerous Environmental Claims, including (but not limited to) the claims identified in Counts 2 and 3.
 
 
 7
 Hartford will ask the panel to decide and declare whether an Environmental Claim that is allocated by Hartford to two or more underlying Hartford policy periods must be allocated and billed to the [blanket contracts] on the basis of one limit and retention per occurrence for each such underlying policy period, one limit and retention per occurrence for all such underlying policy periods, or on some other basis.
 
 
 8
 Count 2 Hartford has presented to SRA billings under the [blanket contracts] for payments in connection with Environmental Claims which SRA has not paid, including (but not limited to) billings for payments made in connection with [34] insureds.... Hartford seeks to recover the sums it has billed SRA on these claims, or such other amounts as are owed as a result of the [Arbitration] Panel's decision on Count 1. Hartford specifically reserves the right to supplement the list of claims under this Count 2 and the amounts billed on these claims.
 
 
 9
 Count 3 As a result of Hartford's position on the difference or dispute identified in Count 1, certain Environmental Claim payments it has made have not resulted in a billing to SRA, including (but not limited to) payments made in connection with [73] insureds.... To the extent the [Arbitration] Panel's determination under Count 1 as to how Environmental Claims should be allocated to the [blanket contracts] results in such claims being billable to SRA, Hartford will seek payment on such claims in the arbitration. Hartford specifically reserves the right to supplement the list of claims under this Count 3.
 
 
 10
 Hartford elaborated further that "[b]ecause Count 1 potentially implicates many, if not all, [environmental] claims under the [blanket contracts]..., Hartford will seek a bifurcated proceeding in which Count 1 is resolved in the first phase of the arbitration and Counts 2 and 3 are resolved in the second phase."
 
 
 11
 In its action (No. 99-CV-9475), SRA sought, inter alia, to compel arbitration of a claim Hartford billed to SRA concerning sums Hartford had paid to Reichhold Chemical Company (the "Reichhold Claim"), a claim also falling within Hartford's Count 2.
 
 
 12
 As noted by the district court, [t]he central dispute underlying these now-consolidated lawsuits is over whether each of Hartford's pending claims for reimbursement by [SRA] is subject to separate arbitration or whether the arbitration panel must first decide a calculation issue that Hartford contends is common to all such claims, both pending and prospective.
 
 
 13
 Hartford, 87 F. Supp. 2d at 301. The allegedly common calculation issue concerns whether Hartford may bill SRA in a manner that corresponds to the way in which Hartford paid the pollution claims of its insureds. Apparently, Hartford paid the pollution claims of its insureds by allocating the damage over multiple years because the injury or damage incurred by its insureds allegedly occurred over multiple policy years. According to Hartford, SRA has rejected Hartford's allocation of claims to multiple years and, instead, insisted that each claim be aggregated into a single year. Because the reinsurance provided by SRA is subject to deductibles (called "retentions") and "per-accident" or "per-occurrence" limitations, the manner in which claims are billable and payable is critical. The parties also dispute whether Hartford's Count 3 is arbitrable under the governing documents because Hartford has not yet billed and SRA has not rejected the claims identified in Count 3, which Hartford asserts would be billable to and payable by SRA if the blanket agreements are determined to provide for the "aggregate" billing method allegedly advanced by SRA.
 
 B. The Arbitration Provisions
 
 14
 Although numerous blanket contracts exist, the parties and the district court agree that the contracts contain very similar, and in many cases identical, arbitration provisions. See Hartford, 87 F. Supp. 2d at 302. Each of these agreements contains one of the following provisions, or wording to the same effect:
 
 
 15
 (1) [I]n the event of any difference arising between the contracting parties it shall be submitted to arbitration....
 
 
 16
 (2) [I]f any dispute shall arise between [Hartford] and [SRA] with reference to the interpretation of this Agreement or their rights with respect to any transaction involved,... such dispute, upon the written request of either party, shall be submitted to [arbitration]....
 
 
 17
 The 1998 Agreement provides, in relevant part, that "either Hartford or SRA may submit disputed Environmental Reinsurance Claims to arbitration in accordance with the written arbitration agreements contained in the [blanket contracts]." The Agreement states further that "[t]he parties expressly reserve their respective positions and rights with respect to all issues relating to Environmental Reinsurance Claims that are not expressly addressed in this Paragraph 4 or elsewhere in this Agreement." The Agreement defines "Environmental Reinsurance Claims" as "all Claims asserted by Hartford against SRA... under the [blanket contracts] for Loss, Claim Expenses, and Declaratory Judgment Expenses arising from Environmental Claims [paid by Hartford]." Finally, in a paragraph entitled "Arbitration of Disputes," the Agreement provides that "[a]ny and all disputes arising under this Agreement shall be deemed to be disputes arising under the [blanket contracts] and shall be submitted to binding arbitration in accordance with the arbitration provisions of the [blanket contracts]."
 
 C. The Proceedings Below
 
 18
 After consolidation of the two civil actions, the district court held that it could only compel arbitration of Count 2 of Hartford's demand (which includes the Reichhold Claim):
 
 
 19
 The Court need not resolve [the parties'] competing arguments [over the merit to arbitrating first the calculation dispute as set forth in Hartford's Count 1] because whatever abstract merit there might be to having the arbitrators make a global determination of the allegedly common calculation issue, this is not what [SRA] agreed to when it entered into the blanket contracts and the 1998 Settlement Agreement. Rather, the parties simply agreed that if a dispute arose with respect to a given pending claim, that particular dispute regarding that particular claim would be submitted to arbitration.
 
 
 20
 Hartford, 87 F. Supp. 2d at 302. In so holding, the district court acknowledged that "some of the blanket contracts contain arbitration clauses that state in general terms that 'in the event of any difference arising between the contracting parties it shall be submitted to arbitration,'" but found that the potentially broad scope of these clauses was implicitly limited by the fact that SRA's "obligation to make payment to Hartford under any of these contracts is not triggered until Hartford, having paid the underlying insured, bills [SRA] for its claimed portion." Id.
 
 
 21
 The court provided three reasons for its construction. First, the court believed that absent such billing and rejection, "the arbitrators would be placed in the strange and difficult position of having to decide in the abstract a hypothetical dispute regarding some prospective claim that had not yet ripened and might never do so--an exceedingly unlikely arrangement for the parties to agree to." Id. Second, the court interpreted the second type of arbitration clause to limit the scope of arbitration to individual transactions, i.e., billings rejected by SRA. Although the court did not explicitly state the basis for this construction, the court appears to have read the phrase "with respect to any transaction" to modify both "the interpretation of this Agreement" and "their rights." See id. Third, the court found that any ambiguity in the arbitration provisions of the blanket contracts was resolved by the 1998 Agreement, which the court construed to limit arbitration to "claims actually billed." Id. Consequently, in the court's view, none of the arbitration provisions contained "the slightest suggestion that the parties have agreed to have the arbitrators decide abstract disputes without reference to an actual, specific claim or transaction." Id.
 
 
 22
 Consistent with its interpretation, the court:
 
 
 23
 (1) denied "arbitration of the 'global' calculation issue allegedly common to all of its claims (both pending and prospective) against [SRA] (Count One of Hartford's demand)[;]"
 
 
 24
 (2) "granted that portion of Hartford's demand as sought to compel arbitration of those claims actually billed to [SRA] (Count Two), as well as [SRA's] demand for arbitration of the Reichhold Chemical claim[;]" and
 
 
 25
 (3) denied "arbitration of all aspects of certain prospective claims not yet billed to [SRA] (Count Three)."
 
 
 26
 Id. at 303 (footnote omitted). Clarifying its initial order requiring that the "arbitrations are to proceed claim-by-claim" before the panel, the court held that although the law did not require consolidated arbitration of the individual pollution claims constituting Count 2, "on the parties' consent, the [arbitration] panel may consolidate as many pending claims as it chooses, provided that it does not thereupon undertake to decide any issues with reference to any other claims, pending or prospective, that are not before the panel." Id. (footnote omitted).
 
 II. DISCUSSION
 
 27
 This appeal raises three issues. First, whether the blanket contracts and the 1998 Agreement permit Hartford to obtain an arbitral opinion as to the proper billing method for pollution claims (Count One). Second, whether the blanket contracts and the 1998 Agreement permit Hartford to invoke arbitration for claims not yet billed to (nor rejected by) SRA on the ground that such claims are payable under the billing method allegedly advanced by SRA (Count Three). Third, whether the arbitration panel must proceed "claim-by-claim" as originally ordered by the district court.
 
 
 28
 Given the broad scope of the arbitration clauses, we hold that Count 1 (billing method) and Count 3 (unbilled claims) are arbitrable. Furthermore, in light of SRA's consent to consolidation and resolution of multiple billed claims before a single arbitration panel, we order the Count 2 claims consolidated before the arbitration panel for a threshold determination of the billing method issue posed by Count 1. We hold further that if such determination causes the unbilled claims contained in Count 3 to become billable, then the arbitration panel should proceed to determine the amounts due Hartford under all pertinent claims, whether billed or unbilled.
 
 
 29
 We have jurisdiction over this appeal pursuant to 9 U.S.C. §16(a)(1)(B), as this is an appeal from an order denying in part Hartford's motion to compel arbitration under the FAA. We review de novo the district court's determination of the arbitrability of Hartford's claims. See Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 76 (2d Cir. 1998).
 
 
 30
 A. The Differences or Disputes Between the Parties
 
 
 31
 In seeking to compel arbitration, Hartford advanced three substantive counts: (1) billing calculation method; (2) claims billed under the multi-year calculation method and rejected by SRA; and (3) claims Hartford asserts would be billable to SRA under the alternative aggregate calculation billing method. The district court found: (1) the first count to pose a hypothetical question that falls beyond the scope of the arbitration clauses; (2) the second count arbitrable; and (3) the third count to be unripe because it consists of claims that have neither been billed to nor rejected by SRA.
 
 
 32
 On appeal Hartford argues that Count 1 properly seeks a declaration by the arbitration panel as to an issue common to all pending and potential pollution claims and Count 3 represents claims properly billable to SRA if the arbitration panel concludes that claims should be calculated according to the aggregate method. SRA responds that Count 1 improperly seeks an advisory opinion that cannot be rendered because the question turns not on general issues of contract interpretation but instead on complex facts and the application of the contract terms to those facts. With respect to Count 3, SRA contends simply that no difference or dispute exists because Hartford has not yet billed, and therefore SRA has not rejected, any claims encompassed within that count. We hold that the district court erred in holding that Counts 1 and 3 do not constitute "differences" or "disputes" between the parties within the meaning of the arbitration clauses in the blanket contracts.
 
 
 33
 Count 1 does not constitute a hypothetical question. Hartford asserts that as a matter of contract interpretation pollution claims are properly billable pursuant to its multi-year billing method. SRA counters that the billing method for any particular claim is fact-dependent and, therefore, cannot be resolved as a single question. SRA further argues that Count 1 constitutes an impermissible request for an advisory opinion. Clearly, a difference or dispute exists over the construction of the blanket contracts and their application to billed and unbilled pollution claims. The resolution of this difference or dispute, however, requires an analysis of the merits, which exceeds the scope of the district court's jurisdiction. See AT&T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 649 (1986) ("[I]n deciding whether the parties have agreed to submit a particular [claim] to arbitration, a court is not to rule on the potential merits of the underlying claims."). At its essence, SRA's argument -- that a declaration is not possible because the billing method depends on the particularities of each claim--is an alternative construction of the blanket contracts, which may be raised as a defense before the arbitration panel. Thus, Count 1 encompasses a difference or dispute between the parties concerning the billed and unbilled claims comprising Counts 2 and 3 and potentially the continuing course of dealing between the parties under the blanket contracts.
 
 
 34
 Count 3 also constitutes a difference or dispute between the parties. Although the unbilled claims comprising Count 3 have not been rejected by SRA, collectively they represent an alternative damages theory to that embodied by Count 2. If the arbitration panel concludes that SRA's aggregate billing method applies under the blanket contracts, then the Count 3 claims are billable. Consequently, we view the Count 3 claims as inherent in the overarching difference or dispute represented by Count 1.
 
 B. The Scope of the Arbitration Clauses
 
 35
 "The Federal Arbitration Act creates a 'body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'" PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1198 (2d Cir. 1996) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). Whether a dispute is arbitrable comprises two questions: "(1) whether there exists a valid agreement to arbitrate at all under the contract in question... and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." National Union Fire Ins. Co. v. Belco Petroleum Corp., 88 F.3d 129, 135 (2d Cir. 1996). There is a strong federal policy favoring arbitration as an alternative means of dispute resolution. See David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London), 923 F.2d 245, 248 (2d Cir. 1991). In accordance with that policy, where, as here, the existence of an arbitration agreement is undisputed, doubts as to whether a claim falls within the scope of that agreement should be resolved in favor of arbitrability. See Moses H. Cone Mem'l Hosp., 460 U.S. at 24 25.
 
 
 36
 The parties may, however, limit by agreement the claims they wish to submit to arbitration. "If the parties make such an intention clear, the federal policy favoring arbitration must yield." New York v. Oneida Indian Nation, 90 F.3d 58, 61 (2d Cir. 1996). It is "clear that 'federal policy alone cannot be enough to extend the application of an arbitration clause far beyond its intended scope.'" McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co., 858 F.2d 825, 831 (2d Cir. 1988) (quoting Fuller v. Guthrie, 565 F.2d 259, 261 (2d Cir. 1977)). Courts must treat agreements to arbitrate like any other contract. See Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ., 489 U.S. 468, 478 (1989); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 n.12 (1967). "Where the parties to an arbitration agreement specifically have excepted a certain type of claim from mandatory arbitration, it is the duty of courts to enforce not only the full breadth of the arbitration clause, but its limitations as well." Oneida, 90 F.3d at 62 (emphasis added). As the Supreme Court has instructed, the FAA does not require parties to arbitrate when they have not agreed to do so, nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement. It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms.
 
 
 37
 Volt Info., 489 U.S. at 478 (internal citations omitted).
 
 
 38
 The district court erred by narrowly construing the arbitration clauses to exclude Counts 1 and 3. Three different provisions (or types of provisions) are at issue. The first type, which is contained in some of the blanket contracts, is unquestionably sufficiently broad to encompass Counts 1 and 3. The language merely requires "any difference" to trigger arbitration. The district court limited the scope of this language by finding that a dispute does not exist until a claim has been billed to, and rejected by, SRA. See Hartford, 87 F. Supp. 2d at 302. Nothing in the contractual language, however, supports this "billing" requirement. Instead, "any difference" includes the differences or disputes existing between the parties over contract interpretation, i.e., the proper method for billing pollution claims and the claims billable under such method.
 
 
 39
 Counts 1 and 3 also fall within the scope of the second type of arbitration clause found in the blanket contracts.[3] The district court's one-sentence explanation that "the limitation of the arbitration to disputes particular to specific pending claims is made more explicit [in the second type of arbitration clause]" is unavailing. Id. By "made more explicit," the district court must have read the phrase "with respect to any transaction" to modify both "the interpretation of this Agreement" and "their rights." This construction seems less natural than reading the prepositional phrase to modify only the phrase "their rights." Nevertheless, assuming both constructions to be reasonable, we are required to resolve this ambiguity in favor of arbitration. See AT&T Techs., 475 U.S. at 650 ("[W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that [a]n order to arbitrate the particular [claim] should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." (emphasis added) (internal quotation marks omitted) (second alteration in original)); Mehler v. Terminex Int'l Co., 205 F.3d 44, 50 (2d Cir. 2000) ("[T]he relevant question is whether the dispute 'arises out of' or 'relates to' th[e] contract.... [I]t is clear that we have not limited arbitration claims to those that constitute a breach of the terms of the contract at issue."); cf. Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 846 (2d Cir. 1987) ("In determining whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the factual allegations in the complaint rather than the legal causes of action asserted. If the allegations underlying the claims 'touch matters' covered by the parties' sales agreements, then those claims must be arbitrated, whatever the legal labels attached to them." (internal citation omitted)) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 624 n.13 (1985)).
 
 
 40
 Finally, the provisions of the 1998 Agreement do not exclude Counts 1 and 3 from arbitration. Apparently recognizing the ambiguity inherent in the second type of arbitration provision, the district court held that "[a]ny remaining ambiguity... is clarified... by the overarching [1998 Agreement]," which the court found to permit arbitration only of "claims actually billed." Hartford, 87 F. Supp. 2d at 302. Once again, however, the language construed by the district court either explicitly permits arbitration of Counts 1 and 3 or is ambiguous and is, therefore, subject to the presumption in favor of arbitrability. The language cited by the district court clearly permits the arbitration of claims billed to and rejected by SRA if the parties and upper level reinsurers cannot agree on an alternative ADR procedure.[4] This language does not, however, exclude the possibility of arbitration of other disputes such as Counts 1 and 3.
 
 
 41
 Furthermore, other language in the Agreement supports an opposite inference. The Agreement states that "[t]he parties expressly reserve their respective positions and rights with respect to all issues relating to Environmental Reinsurance Claims that are not expressly addressed in this Paragraph 4 or elsewhere in this Agreement." The proper billing method is certainly an issue "relating to" pollution claims, as is the assertion of a second set of pollution claims properly payable under an alternative billing method. Furthermore, the 1998 Agreement incorporates the arbitration provisions of the blanket contracts in a paragraph entitled "Arbitration of Disputes," which provides that "[a]ny and all disputes arising under this Agreement shall be deemed to be disputes arising under the [blanket contracts] and shall be submitted to binding arbitration in accordance with the arbitration provisions of the [blanket contracts]." Finally, the Agreement provides that the parties' December 1, 1997 arbitration demands were "withdrawn without prejudice" upon execution of the 1998 Agreement. Hartford's December 1, 1997 demand was broader in scope than the demand at issue here; the former sought "recovery of all amounts which are due and owing... under the [blanket contracts]" and a declaration as to "the manner in which [SRA] must respond to future billed claims under the [blanket contracts]." This demand logically includes a determination of the proper billing method and any amounts owed pursuant to such method. In light of the language of the Agreement and the federal policy in favor of arbitration, the 1998 Agreement must also be construed to permit arbitration of Counts 1 and 3.
 
 C. Consolidation of Claims
 
 42
 The district court held that the parties' consent permits the arbitration panel to "consolidate as many pending claims as it chooses" but that the panel may not "decide any issues with reference to any other claims, pending or prospective, that are not before the panel." Hartford, 87 F. Supp. 2d at 303. On appeal the parties argue over whether consolidation is permissible. Because we conclude that Count 1 is arbitrable, we disagree with the district court's prescription for arbitration and order the Count 2 claims consolidated before the arbitration panel for a threshold determination of the billing method issue posed by Count 1. We hold further that if such determination causes the unbilled claims contained in Count 3 to become billable, then the arbitration panel should proceed to determine the amounts due Hartford under all pertinent claims, whether billed or unbilled.
 
 
 43
 As determined above, Count 1 constitutes a difference or dispute over the manner in which claims under a series of allegedly nearly identical contracts should be billed to SRA. Conceivably, the panel may decide that the issue can be resolved either (a) as a matter of pure contract interpretation concerning all pollution claims (as argued by Hartford) or (b) as a factually-laden question tied to the particularities of each billed or unbilled claim contained in Counts 2 and 3 (as argued by SRA). The arbitration panel, rather than the district court, must make this decision because it requires an analysis of the merits of the claim.
 
 
 44
 SRA argues, however, that the motion to compel arbitration of Count 1 constitutes an impermissible request to consolidate separate arbitrations. In Government of United Kingdom of Great Britain v. Boeing Co., 998 F.2d 68 (2d Cir. 1993), this Court held that a "district court cannot consolidate arbitration proceedings arising from separate agreements to arbitrate, absent the parties' agreement to allow such consolidation." Id. at 74; see also Glencore, Ltd. v. Schnitzer Steel Prods. Co., 189 F.3d 264, 266, 268 (2d Cir. 1999) (vacating order that acknowledged lack of authority to consolidate two separate arbitrations but nevertheless provided for joint hearing on the ground that arbitrations involved common questions of law and fact). Acknowledging the "inefficiencies and possible inconsistent determinations that may result" absent consolidation, this Court explained that such concerns, though valid, "do not provide us with the authority to reform the private contracts" and that "[i]f contracting parties wish to have all disputes that arise from the same factual situation arbitrated in a single proceeding, they can simply provide for consolidated arbitration in the arbitration clauses to which they are a party." United Kingdom, 998 F.2d at 74; see id. at 72 (relying on Supreme Court cases holding that enforcement of agreements, rather than promotion of expeditious resolution of claims, is preeminent goal of FAA).
 
 
 45
 Although both United Kingdom and Glencore involve multiple parties and multiple arbitration agreements and are, therefore, distinguishable from the facts before us, i.e., multiple contracts between the same parties,[5] both decisions are premised on the rationale that the FAA mandates enforcement of the bargains struck by the parties and nothing more. Furthermore, our sister circuits have arrived at the same conclusion. See id. at 72-73 (collecting cases). But see Connecticut Gen. Life Ins. Co. v. Sun Life Assurance Co. of Canada, 210 F.3d 771, 774, 776 (7th Cir. 2000) (reversing district court's denial of reinsurers' motion to consolidate arbitrations with insurers on grounds that arbitration provision contained in single contract executed by all parties "neither clearly permits nor clearly forbids consolidation" and that "[t]o have the identical dispute litigated before different... panels is a formula for duplication of effort and a fertile source... of disputes over esoteric issues in the law of res judicata"); id. at 773 (collecting cases expressing the majority view).
 
 
 46
 Prior to United Kingdom, however, this Court affirmed an order consolidating separate arbitrations where three parties were in arbitration pursuant to a single agreement. See Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A., 527 F.2d 966, 973-74 (2d Cir. 1975); cf. Connecticut Gen. Life Ins. Co., 210 F.3d at 776. As explained in United Kingdom, the decision in Nereus was premised on the fact that one of the three parties was the guarantor of another party, the guarantor had assumed the rights and obligations of that other party, and all three parties had executed a single contract. See United Kingdom, 998 F.2d at 70; see also North River Ins. Co. v. Philadelphia Reinsurance Corp., 63 F.3d 160, 165 (2d Cir. 1995) (stating in dicta that given the different factual scenarios between United Kingdom and Nereus, the former did not overrule the latter and that "it is entirely unclear whether the outcome of a case factually similar to Nereus would, after [United Kingdom], be any different"). We need not decide, however, whether our precedent proscribes consolidation of similar claims arising between the same parties under a series of nearly identical contracts that are silent on the question of consolidation because consolidation is permissible due to the parties' consent.
 
 
 47
 SRA has consented to the joinder of an unlimited number of billed (and rejected) claims before the panel. See Dec. 20, 1999 Tr. of Conf. Call Before D. Ct. at 2-3. Pursuant to this consent, we order the Count 2 claims consolidated before the arbitration panel for a threshold determination of whether the blanket contracts implicated by those claims require (a) a uniform billing method for pollution claims and, if so, the nature of such billing method, or (b) different billing methods depending on the facts of each claim. If, as a result of the determination of the proper billing method or methods, the unbilled claims contained in Count 3 become germane, then the arbitration panel should proceed to determine the amounts due Hartford under both the billed and unbilled claims comprising Counts 2 and 3, respectively. Of course, if the arbitration panel does conclude that the blanket contracts require a uniform billing method, we assume that the parties will cease their "squabbling," Hartford, 87 F. Supp. 2d at 301, and resolve the pollution claims on their own in a businesslike manner.
 
 III. CONCLUSION
 
 48
 For the foregoing reasons, we affirm the district court's determination that Count 2 is arbitrable and reverse its decision that Counts 1 and 3 are not arbitrable. The parties shall proceed to arbitration consistent with this opinion. Costs are awarded to Hartford.
 
 
 
 NOTES:
 
 
 [1]
 Although Hartford technically appeals from both orders, we are concerned only with the second. The first served only to notify the parties of the district court's disposition of the motion to compel and indicated that an explanatory memorandum would be issued. Before issuance of the second memorandum and order, Hartford moved for clarification or reconsideration and, thus, the March 6, 2000 memorandum and order "reconfirmed" the rulings in the first order, except for a slight "clarification" discussed infra at part I.C.
 
 
 [2]
 The arbitration clauses are excerpted infra at part I.B.
 
 
 [3]
 The relevant provision reads:
 [I]f any dispute shall arise between [Hartford] and [SRA] with reference to the interpretation of this Agreement or their rights with respect to any transaction involved,... such dispute, upon the written request of either party, shall be submitted to [arbitration]....
 
 
 [4]
 The 1998 Agreement provides, in relevant part, that "either Hartford or SRA may submit disputed Environmental Reinsurance Claims to arbitration in accordance with the written arbitration agreements contained in the [blanket contracts]." The Agreement defines "Environmental Reinsurance Claims" as "all Claims asserted by Hartford against SRA... under the [blanket contracts] for Loss, Claim Expenses, and Declaratory Judgment Expenses arising from Environmental Claims [paid by Hartford]."
 
 
 [5]
 Of course, "Hartford" is not a single corporation but instead numerous affiliated entities.