**LEWIS TREE SERVICE, INC., et al., Plaintiffs,**

v.

**LUCENT TECHNOLOGIES INC., et al., Defendants.**

**No. 99 Civ. 8556(JGK).**

United States District Court, S.D. New York.

Nov. 20, 2002.

Russel H. Beatie, Jr., Beatie & Osborn, New York City, for Lewis Tree Service, Ironman Magazine.

Christopher H. Harris, James E. Tyrell, Jr., Hugh L. Burns, Latham & Watkins, New York City, James E. Hopkins, Scott Louis Weber, Latham & Watkins, Newark, NJ, for Lucent Tech. Inc. and AT&T Corp.

## OPINION AND ORDER

KOELTL, District Judge.

This is a purported class action brought by Lewis Tree Service, Inc. ("Lewis Tree") and Ironman Magazine ("Ironman") (collectively the "plaintiffs") against AT & T Corporation (AT & T) and AT & T's successor, Lucent Technologies, Inc. ("Lucent") ·(collectively the "defendants") on behalf of purchasers of various telecommunications equipment sold by the defendants. The plaintiffs in their Third Amended Complaint (the "Complaint"), asserting that the products sold by the defendants were "Y2K defective," alleged six causes of actions, namely (1) statutory claims under the New Jersey Consumer Fraud Act ("NJCFA") N.J.S.A. 56:8–1 et seq.; (2) breach of implied warranties of merchantability and fitness for a particular purpose; (3) breach of contract; (4) breach of express warranty; (5) fraud; and (6) breach of duty of good faith and fair dealing. This action was removed to this Court from New York state court pursuant to 15 U.S.C. § 6614(c)(1) (the "Y2K Act").

The defendants now move to compel arbitration of the claims by the plaintiff Ironman on the grounds that the agreement governing the purchase of telecommunications equipment between Ironman and AT & T requires that all grievances arising out of the agreement, if not resolved by non-binding mediation, be arbitrated. Ironman, in response, argues that its claims under the NJCFA cannot be arbitrated, because class action claims are not covered by agreements to arbitrate, and that the arbitration clause in the purchase agreement is unenforceable because the contract is a contract of adhesion.

### I.

Pursuant to a Business Product Purchase Agreement (the "Purchase Agreement") signed on March 15, 1996, Ironman purchased various telecommunications equipment, including a "Merlin Legend"

system, from AT & T for a total price of $91,351.28. (Purchase Agreement attached as Ex. A to Decl. of James Tyrrell ("Tyrell Decl.") sworn to November 15, 2001.) This equipment, like much of the equipment sold by the defendants and other companies, was not programmed to be Y2K compliant. Consequently, on January 1, 2000 the equipment had the potential to experience technical glitches or malfunctions. In December, 1999 as part of the defendants' attempts to make equipment it had sold Y2K compliant, Ironman was offered various options for correcting the flaws in the technology it had purchased. (*See* Dep. of Komla Ametu dated October 3, 2001 at 115–119 attached as Exh. Q to Plaintiffs' Index of Exhibits.)

Under the Purchase Agreement's "Terms and Conditions" provisions, all disputes related to the purchase from the defendants were subject to certain mediation and arbitration procedures. (Purchase Agreement ¶ 16.) It is the sales of these products and the Purchase Agreement's arbitration provisions that are at the center of this motion to compel.

## II.

The defendants' motion to compel arbitration is governed by the Federal Arbitration Act (the "FAA"), pursuant to the explicit terms of the Purchase Agreement's arbitration provision, which provides, in relevant part,

A. Any controversy or claim ... related directly or indirectly to this Agreement ... shall be resolved solely in accordance with the terms of this [section].

B. If [a dispute] cannot be settled by

good faith negotiation between the parties, AT & T and [the purchaser] will submit the [d]ispute to non-binding mediation. If complete agreement cannot be reached within thirty (30) days of submission to mediation, any remaining issues will be resolved by binding arbitration ... The Federal Arbitration Act, 9 U.S.C. Sections 1 to 15, not state law, will govern the arbitrability of all [d]isputes.

(Purchase Agreement ¶ 16.) The parties agreed at oral argument that any question regarding the arbitrability of any particular dispute was governed by the FAA.[1]

The FAA creates a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA]." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *see also Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75 (2d Cir. 1998). In accordance with the FAA, a district court may stay proceedings if it finds a valid arbitration agreement and may compel arbitration when a party does not abide by an arbitration agreement. *See* 9 U.S.C. § § 3 & 4; *see also Aerotel, Ltd. v. RSL Comm., Ltd.*, 99 F.Supp.2d 368, 372 (S.D.N.Y.2000).

When considering a motion to compel arbitration under the FAA, a court must resolve four issues:

first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims

1. The parties, in their motion papers, originally argued that New Jersey law controlled the interpretation and application of the arbitration provision. Paragraph 18 of the Purchase Agreement provides, "The construction, interpretation, and performance of this Agreement shall be governed by the local laws of the State of New Jersey." However, at oral argument the parties conceded that the New Jersey law provision was not applicable with respect to the interpretation of the arbitration clause, which explicitly states that the FAA is controlling with respect to issues relating to arbitration. (*See* Tr. at 4–5; 12–13.)

are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration. *Oldroyd,* 134 F.3d at 75–76 (citing *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 844 (2d Cir.1987) (citation omitted)). "There is a strong federal policy favoring arbitration as an alternative means of dispute resolution." *Oldroyd,* 134 F.3d at 76 (citation omitted); *see also Hartford Accident and Indemnity Co. v. Swiss Reinsurance Am. Corp.,* 246 F.3d 219, 226 (2d Cir.2001). In accordance with that policy, courts should "construe arbitration clauses as broadly as possible," *Oldroyd,* 134 F.3d at 76 (citation and quotation omitted), and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone,* 460 U.S. at 24–25, 103 S.Ct. 927; *see also Hartford Accident and Indemnity,* 246 F.3d at 226; *Collins & Aikman Products Co. v. Bldg. Sys. Inc.,* 58 F.3d 16, 19 (2d Cir.1995). ■ The existence of a broad arbitration clause creates a presumption of arbitrability which can be overcome only if it may be said "with positive assurance" that the arbitration clause is not susceptible to the interpretation that it covers the asserted dispute. *Oldroyd,* 134 F.3d at 76. The arbitration clause in this case that covers "any controversy or claim ... related directly or indirectly to this Agreement ..." is a broad arbitration clause. *See, e.g., ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.,* 307 F.3d 24, 26 (2d Cir.2002) ("any dispute [that] shall arise between the parties ... with reference·to the interpretation of this Agreement or their rights with respect to any transaction involved" held to be broad arbitration clause); *Oldroyd,* 134 F.3d at 76 ("[a]ny dispute, controversy or claim arising under or in connection with [the agreement]" is a broad arbitration clause.); *Collins,* 58 F.3d at 19 ("[a]ny claim or controversy arising out of or relating to th[e] agreement is a broad arbitration clause."); *Vera v. Saks & Co.,* 218 F.Supp.2d 490, 494 (S.D.N.Y.2002) ("any dispute ... arising out of or relating to this Agreement" found to be broad clause).

Ironman does not dispute that it agreed to arbitrate nor does it dispute that the claims raised in the Complaint are within the scope of the broad arbitration clause contained in the Purchase Agreement.[2] Rather, Ironman raises three arguments as to why the arbitration agreement should not be enforced. First, Ironman argues that the arbitration clause is unenforceable because arbitration is fundamentally incompatible with class action claims

**2.** The defendants filed an earlier motion to dismiss and compel arbitration of Ironman's claims. At that time, Ironman disputed that the Purchase Agreement was the relevant contract governing the relationship between Ironman and the defendants. Ironman argued that its claims against the defendants arose out of the lease agreement it had entered into with Colonial Pacific Leasing, rather than the Purchase Agreement entered into with AT & T. This Court found that "with respect ·to plaintiff Ironman, it is unclear which contract or contracts govern Ironman's relationship with the defendants." *Lewis Tree Serv., Inc. v. Lucent Technologies, Inc.,* No. 99 Civ. 8556, 2000 WL 1277303, at *5 (S.D.N.Y. Sept. 8, 2000). Consequently, it could not be determined "whether Ironman is bound to pursue its claims in arbitration pursuant to the alleged purchase agreement." *Id.* at *4 n. 2. Discovery made it clear, however, that the lease agreement was a financing mechanism and that Ironman's relations with AT & T were governed by the Purchase Agreement. Oral argument made clear that Ironman's claims against the defendants are governed by the Purchase Agreement, and by the arbitration clause contained therein. (*See* Tr. at 8–9.) In addition, Ironman made no argument to the contrary in its papers.

arising under the NJCFA. Second, it argues that the arbitration clause should not be enforced because the Purchase Agreement was a contract of adhesion with terms that are inherently unfair to Ironman. Finally, Ironman argues that the defendants' motion to compel arbitration is untimely. None of these arguments has merit.

### A.

■ Ironman first asserts that a class action remedy is integral to the NJCFA enforcement scheme, and the unavailability of class certification procedures in arbitration proceedings seriously diminishes the incentive of litigants to bring individual claims under the NJCFA, which are usually for small sums of money, and thereby undermines the deterrent effect of the statute. Ironman also asserts that forcing individual NJCFA claims to be arbitrated would preclude consumers from receiving the benefits of various penalty and attorneys fees provisions under the statute. Due to these two limitations of an arbitration forum, Ironman argues that the arbitration provision cannot be enforced, at least with respect to its statutory claims.

With respect to federal statutory claims, the Supreme Court has made clear that "statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). In *Gilmer* the Court outlined the standards to be used to determine whether a claim arising under a federal statute can be subject to arbitration:

> [h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue. In this regard, ... the burden is on [the party

raising the statutory claim] to show that Congress intended to preclude a waiver of a judicial forum ... If such an intention exists, it will be discoverable in the text of the [statute], its legislative history, or an "inherent conflict" between arbitration and the [statute's] underlying purposes. Throughout such an inquiry, it should be kept in mind that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.

*Id.* (quotations and citations omitted).

This analysis is identical for a claim arising under a state statute, when the underlying arbitration provision that requires the statutory claim to be arbitrated is governed by the FAA and not by state law. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123–24, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001); *see Allied–Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 271–272, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); *Southland Corp. v. Keating*, 465 U.S. 1, 15–16, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) (holding that the FAA pre-empts state law that undercuts the enforcement of arbitration agreements governed by the FAA, irrespective of the forum of the lawsuit).

In *Gras v. Associates First Capital Corp.*, 346 N.J.Super. 42, 786 A.2d 886 (2001), *certif. denied*, 171 N.J. 445, 794 A.2d 184 (2002), the Court undertook the analysis outlined in *Gilmer* for a claim under the NJCFA. The plaintiffs in *Gras* raised claims under the NJCFA with respect to loan agreements that contained provisions they alleged were fraudulent. 786 A.2d at 888. The agreements required that any dispute or claim related to the loans be subject to arbitration. *Id.* The Court found that because the contract involved interstate commerce, the FAA, and not state law, governed the interpretation

and application of the arbitration provision. *Id.* at 889.

Applying the standards outlined in *Gilmer*, the *Gras* court held that there was no inherent conflict between the underlying purposes of the NJCFA and arbitration. *Id.* at 891. Neither the text nor the legislative history of the Act indicated any intention by the New Jersey legislature to preclude arbitration of NJCFA claims. *Id.* at 891–92.

The plaintiffs in *Gras* raised the same arguments raised by the plaintiffs in this case, namely that the remedies under the NJCFA could not be vindicated in arbitration and that arbitration is inappropriate when plaintiffs are representatives in a purported class action. The New Jersey Court found both of these arguments unavailing. First, the Court found that all of the purposes of the NJCFA, compensating the victim for loss, punishing wrongdoers by awarding treble damages, and attracting competent counsel to take on cases by awarding attorneys' fees, were "objectives [that] can be vindicated in the arbitration forum and a successful plaintiff can achieve all statutory remedies in the same forum." *Id.* at 892. Second, the Court found that the class action argument was ultimately unpersuasive, because while there were some factors that favored judicial resolution of claims forming the basis of a class action lawsuit, there was no "legislative mandate or overriding public policy in favor of class actions" in the NJFCA, and there was a compelling public policy that favored the enforcement of arbitration provisions that were bargained for in contracts. *Id.* at 892–93.

The reasoning of the *Gras* court is persuasive. It is clear from *Gras* that, as was the case with the federal statutes at issue in *Gilmer* and its progeny, arbitration of claims arising under the NJCFA is not incompatible with the broad remedial purposes of the Act and does not preclude any plaintiff from recovering a statutory remedy. Moreover, the plaintiffs have advanced no argument, aside from the same issue raised and rejected in *Gras*, why the rationale for permitting class actions should trump the presumption of arbitrability created by the FAA. The *Gras* court specifically rejected the class action argument with respect to the NJCFA. Federal courts have also consistently enforced arbitration provisions in the context of class action lawsuits when federal statutory claims have been at issue. *See, e.g.,* *Gilmer*, 500 U.S. at 32, 111 S.Ct. 1647 (rejecting argument that arbitration procedures conflict with purpose of Age Discrimination in Employment Act based on their failure to allow for class action certification, because arbitrators have power to fashion broad equitable relief that has the same effect as class action lawsuit); *Hale v. First USA Bank, N.A.*, NO. 00 Civ. 5406, 2001 WL 687371, at *7 (S.D.N.Y. June 19, 2001) (collecting cases that have rejected argument that Congress intended to create a non-waivable right to bring a Truth in Lending Act claim in the form of a class action or to bar enforcement of arbitration provisions). Therefore, *Gilmer*'s presumption that statutory claims can be subject to arbitration should be applied to Ironman's NJCFA claims and those claims are subject to arbitration.

### B.

■ Ironman also argues that the arbitration provision should not be enforced because the Purchase Agreement is a contract of adhesion. This argument also fails.

■ Under the FAA, 9 U.S.C. § 2, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate an arbitration agreement." *Doctor's Assoc., Inc. v. Ca-*

*sarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). In determining whether a generally applicable contract defense may invalidate an arbitration agreement, a court looks to state law. *See Perry v. Thomas,* 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987). The parties do not dispute that the choice of law provision in the Purchase Agreement is valid, and that this provision requires New Jersey law to be applied to this argument.

■ Under New Jersey law, a contract is a contract of adhesion if the terms of the agreement, "were presented to the public on standardized printed forms, on a take-it-or-leave-it basis without opportunity for purchasers to negotiate any of the terms." *Young v. Prudential Ins. Co. of America, Inc.,* 297 N.J.Super. 605, 688 A.2d 1069, 1077 (1997). However, even if a contract is technically a contract of adhesion, that is only the beginning of the inquiry under New Jersey law. The court must then determine whether the contract is enforceable and that requires a determination and consideration not only of "the take-it-or-leave-it nature or the standardized form of the document, but also the subject matter of the contract, the parties' relative bargaining position, the degree of economic compulsion motivating the 'adhering' party, and the public interest affected by the contract" in determining whether to enforce the contract. *Id.; see also Gras,* 346 N.J.Super. at 48, 786 A.2d 886.

Consideration of these factors indicates that the arbitration provision should be enforced. Ironman has put forward no evidence supporting its contention that the Purchase Agreement is an unenforceable adhesion contract. While the provisions of the Purchase Agreement were contained on a pre-printed form, the Agreement covered the purchase of a significant telecom-munications system with a price in excess of $90,000. Ironman was free to purchase such equipment from other sources, and there is no evidence that Ironman was under any economic compulsion to purchase the equipment from AT & T. The Ironman executive responsible for the purchase of the equipment acknowledged that he read and understood the terms and conditions of the purchase, and indeed he signed the Purchase Agreement in two places under explicit acknowledgments that he understood all of the conditions. (Balik Dep. at 116, attached as Ex. O of Tyrell Aff.; Purchase Agreement.) Ironman was plainly a sophisticated purchaser and the executive consulted his attorney on the terms of the Purchase Agreement because of the size of the Purchase, before actually signing the Agreement. (Balik Dep. at 121–22.) Considering all of the circumstances, Ironman has presented no evidence that the arbitration provision should not be enforceable. *See Young,* 688 A.2d at 1078.

Because Ironman has not demonstrated that the Purchase Agreement was signed under circumstances creating an unenforceable contract of adhesion, the provision requiring all of Ironman's claims to be arbitrated is enforceable. *See id.* (finding that even if contract is literally adhesion contract, absent egregious circumstances, policies favoring arbitration require enforcement of such provisions); *see also Klos v. Polskie Linie Lotnicze,* 133 F.3d 164, 168–69 (2d Cir.1997).

**C.**

■ Finally, Ironman argues that the defendants' motion to compel arbitration was waived because it was untimely. This argument is also without merit.

■ A party waives its right to invoke arbitration when it engages in behavior

that results in prejudice to the opposing party. *Doctor's Associates, Inc. v. Distajo,* 107 F.3d 126, 131 (2d Cir.1997). A party can suffer "substantial prejudice" to its legal position, such as by the possibility that it will be required to re-litigate a motion on which it prevailed. A party may also be "prejudiced by the unnecessary delay or expense that results when an opponent delays invocation of its contractual right to arbitrate." *Id.* (quotations and citations omitted).

Ironman alleges that the defendants waived their ability to invoke arbitration because they waited until the end of discovery to make the present motion. However, the defendants first made their motion to compel arbitration along with their first motion to dismiss, and it was Ironman who alleged that the Purchase Agreement did not cover the contractual relationship between the defendants and Ironman. That argument was baseless and it was refuted by the deposition testimony of the plaintiff's agent who signed the Purchase Agreement. (*See* Balik Dep. at 107–08, 131–32.) Discovery was necessary to dispose of the plaintiff's meritless argument that the Lease Agreement covered its dispute with the defendants. A considerable amount of additional time was also expended while the parties discussed a possible resolution of the case. Finally, Ironman has provided no evidence of what prejudice, in terms of its legal position, or in terms of expense or loss of time, that it suffered by having to respond to an arbitration demand that was filed near the close of discovery. In fact, Ironman may have benefitted from being able to use any discovery it received from the defendants.

Consequently, because any delay in this case was the fault of Ironman and because Ironman did not suffer any prejudice from the allegedly late filing of the motion to compel, the defendants did not waive their right to compel arbitration.

### D.

■■■ Ironman's arguments that the arbitration clause should not be enforced have no merit, and all the claims it raises against the defendants are subject to arbitration. The FAA provides that a district court, upon determining that an action before it is subject to an enforceable arbitration provision, "shall ... stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement ..." 9 U.S.C. § 3. Because all of Ironman's claims are subject to arbitration, no useful purpose will be served by granting a stay of Ironman's claims and thus its action against the defendants is dismissed. *See Seus v. John Nuveen & Co., Inc.* 146 F.3d 175, 178 (3d Cir.1998) ("If all the claims involved in an action are arbitrable, the court may dismiss the action instead of staying it."); *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir.1992) (same); *see also Mahant v. Lehman Bros.,* No. 99 Civ. 4421, 2000 WL 1738399, at *3–4 (S.D.N.Y. Nov. 22, 2000); *E. Fish Co. v. South Pac. Shipping Co., Ltd.,* 105 F.Supp.2d 234, 241–42 & n. 10 (S.D.N.Y.2000); *Aerotel,* 99 F.Supp.2d at 374; *Berger v. Cantor Fitzgerald Secs.,* 967 F.Supp. 91, 96 (S.D.N.Y. 1997).[3]

### CONCLUSION

All of the remaining arguments of the parties are either moot or without merit.

---

**3.** The defendants, at oral argument, acknowledged that in their moving papers they had argued for staying the claims of Ironman, but made it clear that the appropriate remedy,

upon a finding that all of Ironman's claims were to be arbitrated, was dismissal of Ironman's Complaint. (Tr. at 9.)

For the reasons explained above, the defendants' motion to compel arbitration is granted, and Ironman's claims against the defendants are dismissed without prejudice.

**SO ORDERED.**